EXHIBIT 2

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| COACH IP HOLDINGS, LLC, COACH SERVICES, INC. AND TAPESTRY, INC., | |
| Plaintiff, | Index No. |
| -against- | **SUMMONS** |
| ACS GROUP ACQUISITIONS LLC, | |
| Defendant. | |

**TO THE ABOVE NAMED DEFENDANT:**

     **YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve a copy of your Answer or, if the Complaint is not served within the Summons, to serve a notice of appearance, on the Plaintiff's attorney within twenty (20) days after service of this Summons, exclusive of the day of service; or within thirty (30) days after service is complete if this Summons is not personally delivered to you within the State of New York; or within sixty (60) days if it is the United States of America.  In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: December 1, 2023
       New York, New York

**BRYAN CAVE LEIGHTON PAISNER, LLP**

By:     */s/  Thomas J. Schell*

Christine Cesare     (Bar No. 1990134)
Thomas J. Schell     (Bar No. 2991149)
Jane Ernst     (Bar No. 5927009)
1290 6th Ave,
New York, NY 10104
Tel: (212) 541-2000
cbcesare@bclplaw.com
tjschell@bclplaw.com
jane.ernst@bclplaw.com

*Attorneys for Plaintiffs*

TO:     **ACS Group Acquisitions LLC**
        244 East 58th Street
        New York, NY 10022

        Harlan M. Lazarus
        Lazarus & Lazarus, P.C.
        240 Madison Ave., 8th Floor
        New York, NY  10016

        Robert Giacovas
        Lazare Potter Giacovas & Moyle LLP
        747 Third Avenue
        New York, NY 10017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| Coach IP Holdings, LLC, Coach Services, Inc. and Tapestry, Inc., | Index No.: |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| ACS Group Acquisitions LLC, | Plaintiff designates New York County as the place of trial. |
| Defendant. | |

Plaintiffs Coach IP Holdings, LLC, Coach Services, Inc. and Tapestry, Inc. (collectively, "Coach") bring this action against ACS Group Acquisitions LLC ("Defendant" or "ACS")[1] for injunctive relief, declaratory relief, and damages based on trademark infringement, unfair competition and false advertising and other claims.

## NATURE OF THE ACTION

1.     On November 8, 2023, by letter entitled "Enforcement Notice," ACS asserted an alleged security interest in the COACH® branded tech accessories in inventory of Vinci Brands, LLC, f/k/a Incipio, LLC ("Vinci") and in-process, non-cancelable orders of Vinci for COACH® branded tech accessories (collectively, the "Alleged Collateral").  On November 21, 2023, ACS sent Coach another letter entitled "Enforcement Notice" (together with the November 8, 2023 letter, the "November 2023 Letters"), enclosing a product list, purportedly representing the Alleged Collateral.

2.     ACS asserts in the November 2023 Letters that it has the right to take possession of, dispose of, and sell the Alleged Collateral – all of which actions are prohibited under both the plain terms of the License Agreement between Coach, as Licensor, and Vinci, as Licensee, dated

---

[1]     A search has revealed a Delaware limited liability company registered to do business in New York under the name ACS Group Acquisition LLC (without an "s"). ACS's complaint in the Kate Spade Action (defined below) refers to ACS as "ACS Group Acquisitions LLC." Assuming ACS Group Acquisition LLC is the same entity as ACS Group Acquisitions LLC in the Kate Spade Action and/or assuming ACS Group Acquisition LLC is the proper name, this complaint is directed to both entities and the term "ACS" refers to both names.

January 9, 2019, as subsequently amended (the "Coach License Agreement"), which provides various, agreed-to limitations to Vinci's rights (and therefore ACS's alleged rights), as well as the Lanham Act's protections over Coach's right to control use of its COACH® Marks.  On information and belief, ACS seeks solely to maximize its profit on a loan to Vinci that ACS likely purchased for pennies on the dollar, disregarding Coach's ongoing business, trademark registrations and ownership, reputation and/or goodwill.

3.      ACS's repeated threats and actions to seize, take possession of, dispose of, and/or sell tech accessories bearing the COACH® Marks constitute imminent, impending, and/or current acts of trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*.

4.      ACS's threats and actions also establish that its infringement is imminent and impending, giving rise to a justiciable controversy between the parties, such that Plaintiffs seek a declaration, pursuant to CPLR § 3001, that (i) ACS is *not* the legal successor to Siena Lending Group ("Siena") and its rights under the Licensor Consent Agreement dated November 23, 2021, between Coach, Vinci, and Siena (the "Siena Consent Agreement"), (ii) to the extent ACS can even assert any alleged rights, any interest in the COACH® branded tech accessories are subject to all restrictions and limitations imposed under the Coach License Agreement, including all post-termination restrictions, rights retained by Coach and applicable law (as explained below), (iii) accordingly, ACS has no right to seize, take possession of, dispose of, and/or sell the Alleged Collateral or to assert that it will do so, and (iv) any use, distribution, disposition, or sale of the COACH® branded tech accessories by ACS violates the Coach License Agreement, damages Coach and constitutes trademark infringement under the Lanham Act.

5.      As further detailed below, upon information and belief ACS is using, at least, Vinci's website and Amazon.com storefront to – without authorization, permission, right, or license – advertise, promote, offer for sale, and sell COACH® branded tech accessories.

6.      Further, ACS's wrongful actions are preventing the Alleged Collateral and other inventory from being delivered to Coach and/or destroyed as specifically required by the Coach License Agreement.  Based on these facts, Plaintiffs are entitled to injunctive relief, enjoining ACS

from (among other things) acts of infringement and directing it to release any interest the Alleged Collateral and any other COACH® branded items so that they can be delivered to Coach and/or otherwise disposed of, as set forth below.

## PARTIES

7.      Tapestry, Inc. is a Maryland corporation duly organized and existing under the laws of the State of Maryland with a place of business at 10 Hudson Yards, New York, New York 10001 ("Tapestry").

8.      Coach IP Holdings, LLC is a Delaware limited liability company duly organized and existing under the laws of the State of Delaware with a place of business at 10 Hudson Yards, New York, New York 10001, and is a wholly-owned subsidiary of Tapestry.

9.      Coach Services, Inc. is a Delaware limited liability company duly organized and existing under the laws of the State of Delaware with a place of business at 10 Hudson Yards, New York, New York 10001, and is a wholly-owned subsidiary of Tapestry.

10.     On information and belief, as ACS has alleged in its complaint in the Kate Spade Action[2] (defined below), ACS is a Delaware limited liability company with a principal place of business in New York, New York.

## JURISDICTION AND VENUE

11.     Venue is proper in New York County pursuant to New York Civil Rules and Practice § 503 as Plaintiffs', as well as (on information and belief) Defendant's, principal place of business is in New York County and the acts and events giving rise to the claims set forth herein took place fully, or in substantial part, in New York County.

12.     Jurisdiction and venue are proper herein pursuant to New York Civil Rules and Practice §§ 301 and 302 as, on information and belief, Defendant transacts business in the City, County, and State of New York.

---

[2]      On July 1, 2023, ACS filed a complaint in the Supreme Court of the State of New York, *ACS Group Acquisitions LLC v. Kate Spade LLC et al.*, Index No. 653181/2023, Justice Cohen (the "Kate Spade Action"), the details of which are set forth below.

13.     This Court also has personal jurisdiction over ACS because, among other reasons, (i) ACS commenced the Kate Spade Action (defined below) against KSNY, concerning similar subject matter as this action, in New York Supreme Court, and (ii) as ACS has alleged in its complaint in the Kate Spade Action, ACS has a principal place of business in New York, New York and transacts business with, at least, Vinci in New York.

<u>FACTS</u>

**A.     THE COACH BRAND**

14.     Since its founding in New York City in 1941, Coach has grown from a family-run leathergoods company into the iconic global fashion and lifestyle COACH® brand known around the world for its craftsmanship high-quality handbags and lifestyle collections.

15.     Coach is a worldwide leader in, among other things, the design, marketing, and distribution of premium lifestyle products, including, without limitation, a full line of tech accessories, in addition to handbags, wallets, wristlets, footwear, eyewear, jewelry, watches, ready-to-wear and fragrances (collectively, the "Coach Goods").

16.     Coach first registered the COACH® mark in 1963. Coach now owns more than 51 registrations for its COACH® Marks at the U.S. Patent and Trademark Office alone, that are used by Coach, and its authorized licensees, and that consist of or include the word mark, COACH®, and/or the logo/design mark featuring a stylized letter "C", including for example the marks shown below:

COACH®

COACH NEW YORK®

 ®



(collectively, the "COACH® Marks").

17.     Coach's marketing efforts and sales success, combined with its close attention to the quality, design, and construction of its products, including its celebration of craft, its hometown of New York City, and the optimism of authentic American style, has resulted in the COACH® Marks becoming universally recognized and associated with a distinctive look, legacy of craft, and quality that points exclusively and unmistakably to Coach. By virtue of the extensive distribution and success of the Coach Goods and related services, the COACH® Marks are distinctive and famous.

18.     In part, Coach accomplishes its distribution of Coach Goods and related services through trademark licenses that it grants to third-party entities.  As relevant here, the licensed partners that produce licensed Coach Goods contract directly with product manufacturing facilities to produce licensed Coach Goods and also with customers, both distributors and retailers, to distribute and sell the licensed Coach Goods.

19.     Today, Coach offers numerous product categories in the United States and around the world, including tech accessories (including phone covers, audio, earbuds and headphones, charging devices and small speakers for home), as well as handbags; small leather goods; ready-to-wear apparel (including dresses, separates, jackets, outerwear, skirts and pants); wearable tech (smart watch straps); jewellery; watches; footwear; legwear; outerwear; hair accessories; and fragrances.

20.     Coach has succeeded in extending its brand into different product categories and consumer markets primarily through a number of licensing partnerships, including cobranding and/or product collaborations. For example, for a number of years, Vinci (and its predecessor, Incipio, LLC) were the Coach brand's license partner for tech accessories, including phone cases. That relationship ended on June 30, 2023, when the License Agreement ended.

21.     Coach has received worldwide recognition and numerous accolades for its innovation and reach in product design and its successful marketing strategies. For example, Coach's creative director, Stuart Vevers, was awarded the Accessory Designer of the Year award by the Council of Fashion Designers of America and the Designer of the Year award by the American Apparel & Footwear Association (AAFA) for his work at Coach.

22.     Coach dedicates millions of dollars annually to market its Coach Goods, which includes the distribution of brand imagery in film and print, digital and social media, outdoor advertising, and at public relations efforts, fashion events, and presentations.

23.     Coach also invests in digital advertisements aimed at potential customers browsing third-party websites and maintains and operates Coach pages on all major social media platforms, including, Facebook, Instagram, TikTok, Pinterest, X (formerly Twitter), and YouTube. Coach has amassed about 7 million followers on Instagram and over 8 million likes on Facebook. Additionally, Coach enjoys more than 94 million views of its YouTube content.

24.     Coach's business includes direct-to-consumer sales, through its own retail stores and its online store. Over the years, the number of visits to Coach's online store has grown into the millions.

25.     Coach's sales of products bearing the COACH® Marks have grown to billions of dollars. Sales of COACH® branded tech accessories—the products at issue here—are equally significant, selling millions annually.

26.     Coach also sells its products at numerous retail and outlet stores across the U.S. and its products are sold to in specialty stores and major department stores and Coach's third-party retailers sell COACH® branded merchandise in their retail locations and through their websites. Coach also sells its goods through ecommerce.

**B.     THE COACH® MARKS.**

27.     Coach owns more than 51 registrations for its COACH® Marks at the U.S. Patent and Trademark Office alone.

28.     Many of Coach's federal registrations of the COACH® Marks are incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.

29.     Coach's registrations for its COACH® Marks at the U.S. Patent and Trademark Office include, for example:

- Incontestable U.S. Trademark Registration No. 2088706 for COACH® in connection with, *inter alia*, "eyeglass cases, cellular phone cases, computer cases and computer accessory cases"; and

- U.S. Trademark Registration No. 5205421 for ® in connection with "Carrying cases specially adapted for electronic equipment, namely, cell phones, laptops, portable electronic book readers, ear buds and portable media players; Computer mouse; Ear buds; Eyeglass chains and cords; Eyeglass frames; Eyeglasses; Eyewear; Eyewear cases; Mouse pads; Protective covers and cases for cell phones, laptops and portable media players; Protective covers for electronic reading devices; Sunglasses; USB (universal serial bus) hardware."

30.     The COACH® Marks have been prominently and continuously used in Coach's sales and marketing of virtually all product categories, since the debut of its iconic handbags, including on product packaging and hangtags, throughout the <coach.com> website and associated social media accounts, and in connection with the products themselves, including on various tech accessories.

31.     Coach's widespread and continuous use of the COACH® Marks since for more than 75 years has made the COACH® Marks both synonymous with the brand and famous, in addition to conferring valuable common law rights upon Coach.

## C.     COACH LICENSE AGREEMENT EXPIRATION AND EFFECT OF TERMINATION PROVISIONS

32.     The Coach License Agreement expired by its terms on June 30, 2023.

33.     The Coach License Agreement provides Coach with absolute, sole discretion in deciding whether to exercise the right to, and enter, a renewal term with Vinci.  Coach declined to renew the Coach License Agreement.

34.     Coach promptly issued to Vinci a Notice of Expiration of License Agreement on July 1, 2023, following the Coach License Agreement's natural expiration on June 30, 2023 (the previous day).

35.     Vinci did not contest, or otherwise respond to, to the July 1, 2023 Notice of Expiration.

36.     On July 3, 2023, Coach issued to Vinci a Notice of Coach's Exercise of Rights, detailing various post-expiration obligations of Vinci under the Coach License Agreement including, for example and without limitation: (i) immediate cessation of use of the COACH® Marks (defined herein); (ii) immediate cessation of all sales of COACH® branded tech accessories through <Incipio.com> and all other sales channels owned, operated, or controlled by Vinci; and (iii) immediate delivery to Coach of all works of authorship and other intellectual property, requesting Vinci's confirmation and compliance by 5:00 p.m. on July 5, 2023.

37.     Vinci did not respond to the July 3, 2023 Notice of Coach's Exercise of Rights.

38.     As a result of the expiration of the Coach License Agreement on June 30, 2023, all of Vinci's rights (as well as those claiming rights through Vinci, such as ACS) to use the COACH® Marks terminated and reverted to Coach as Licensor, and, except for limited circumstances,[3] Vinci and all of its associated entities and individuals, including but not limited to ACS, were required to cease and permanently discontinue any use of the COACH® Marks in connection with manufacturing, advertising, promoting, offering to sell, selling, distributing, or dealing in or with Licensed Merchandise, *i.e.*, tech accessories. *See* Coach License Agreement, § 11.1(a).

39.     Coach made an election, subject to Coach's "Inventory Purchase Option" under the

---

[3]     Under the expired Coach License Agreement, Vinci had limited right post-expiration rights. *See* Coach License Agreement, §§ 11.1(b), 11.2; *see also id.*, § 4.4. That notwithstanding, because Vinci was in default under the Coach License Agreement as of at least June 15, 2023, since then they had *no right* to sell any inventory to customers. *See id.* § 11.3.

expired Coach License Agreement, to acquire certain products in Vinci's inventory. *See* Coach License Agreement, § 11.

40.     Vinci has failed to coordinate the delivery of those elected products to Coach.

**D.     UPON INFORMATION AND BELIEF, AND WITHOUT LICENSE OR AUTHORIZATION, ACS IS SELLING COACH® BRANDED GOODS**

41.     Notwithstanding that ACS has no rights to use the COACH® Marks, on information and belief, ACS is using the COACH® Marks, without authorization, in connection with advertising, promoting, offering for sale, and selling COACH® branded tech accessories that it wrongly "seized" from Vinci's inventory.

42.     Upon information and belief, beginning on or around at least November 30, 2023, ACS, without license, permission, approval, or other authorization, began advertising, promoting, offering for sale, and selling COACH® branded tech accessories, *i.e.*, Infringing Products, at least through Vinci's website (https://incipio.com/).

43.     A review of Vinci's website (https://incipio.com/) indicates Infringing Products are currently being advertised for sale, and, upon information and belief, sold.  The November 30, 2023 screenshot below reflects, on information and belief, ACS's COACH® branded storefront webpage on Vinci's website (https://incipio.com/pages/coach?_pos=31&_sid=ea1e470b1&_ss=r).



44.     A November 30, 2023 review of Vinci's website (https://incipio.com/) indicates, on information and belief, that ACS is using that website to advertise for sale, and, upon information and belief, sell, at least thirty (30) Infringing Products.[4]

45.     A November 30, 2023 search of Vinci's storefront at Amazon.com (https://www.amazon.com/stores/Incipio/Incipio/page/7CA997DC-6B66-40C3-BBA9-5702C8F7FF3F) for "coach" shows, on information and belief, that ACS is using that storefront to advertise for sale, and, upon information and belief, sell Infringing Products.

46.     Upon information and belief, ACS is, without authorization, currently advertising, promoting, offering for sale, and selling COACH® branded tech accessories, *i.e.*, Infringing Products, through identical channels of trade and in direct competition with authentic Coach goods.

---

[4]    The screenshots reflect that a search of Incipio.com for "coach" returned "31 Results." However, one (1) of the listed "31 Results" is a link to Vinci's COACH® branded storefront webpage ("[html-content] [html-content] [collection] Shop All https://incipio.com/collections/coach [html-content] [html-content] Continue reading" where the "Continue reading" links to https://incipio.com/pages/coach?_pos=31&_sid=ea1e470b1&_ss=r).

47.     As a result, customers who are encountering and purchasing COACH® branded tech accessories are likely to and in fact are being confused about the source, origin, or sponsorship of ACS's unlicensed Infringing Products.

48.     By reason of ACS's acts, Coach has and will continue to suffer damage to its business, reputation, goodwill, profits, and sales. Unless enjoined, ACS will continue to sell Infringing Products using the COACH® Marks without authorization, which will irreparably damage Coach. Coach's remedies at law are not adequate to compensate Coach for all the resulting injuries caused by ACS.

## E.     OVERVIEW OF PENDING STATE COURT LITIGATION INVOLVING ACS

49.     Issues about ACS's alleged rights have already been considered by a court in another action, interpreting language under similar agreements.

50.     As noted above, on July 1, 2023, ACS filed the Kate Spade Action. In doing so, ACS made a series of factual misstatements, misconstrued and ignored a similar license agreement – namely the license agreement between Plaintiffs' affiliate, Kate Spade, LLC, and Vinci's predecessor, Incipio Technologies, Inc., entered into as of April 25, 2014, as amended (the "KSNY License Agreement") – and misapplied the law. *See* Kate Spade Action, Complaint, ¶ 27 n.1.

51.     In the Kate Spade Action, ACS sought a declaration that ACS has "superior priority to seize, to take possession, to dispose of and to sell the" alleged collateral, which "includes the Licensed Merchandise and In Process Orders" and demanding injunctive relief against KSNY.

52.     On July 24, 2023, the Kate Spade Action court *denied* ACS's request for a TRO at a hearing on the same date.

53.     On August 16, 2023, the Kate Spade Action court *denied* ACS's motion for preliminary injunction at a hearing on the same date, finding that as a result of the defendants' termination of the KSNY License Agreement, neither Vinci nor ACS had any right "to market or sell products bearing defendant's mark." Kate Spade Action, Aug. 16, 2023 Hearing, 54:16-20.

54.     In denying ACS's motion for preliminary injunction at the August 16, 2023 hearing, the Kate Spade Action court also tacitly rejected ACS's arguments that it was a legal successor to Siena and the Siena Consent Agreement. *See generally*, *id*.

55.     The New York trial court has now *twice* held that ACS was a stranger to the KSNY License Agreement, and rejected ACS's argument that the Uniform Commercial Code gave ACS greater rights than Vinci with respect to the alleged collateral. Further, it rejected ACS's legal successor arguments when presented for the first time at the preliminary injunction hearing.

56.     On August 29, 2023, KSNY filed its Motion to Dismiss the Kate Spade Action.

57.     KSNY's Motion to Dismiss is fully briefed.

58.     Among the bases of KSNY's Motion to Dismiss is that (i) ACS is prohibited, as a matter of law, from enforcing any alleged security interest in a licensee's alleged collateral under the KSNY License Agreement, which is similar in pertinent respects to the Coach License Agreement, and (ii) ACS is not a legal successor to Siena and has no rights in, to, or under the Siena Consent Agreement.

59.     ACS is similarly prohibited from enforcing any alleged security interest in Alleged Collateral under the expired Coach License Agreement.

## First Cause of Action

## (Federal Trademark Infringement under 15. U.S.C. § 1114)

60.     Coach realleges and incorporates herein all allegations contained in the foregoing and following paragraphs of this Complaint as if fully set forth herein.

61.     The COACH® Marks are valid protectable trademarks.

62.     The COACH® Marks are distinctive and famous. A majority of the consuming public associate the COACH® Marks with a single source, Coach.

63.     It is undisputed that Coach owns the federal trademark registration for the COACH® Marks, which are prima facie evidence that the marks are valid and protectable.

64.     It is also undisputed that ACS has no ownership interest in any Coach trademarks and no license to sell any COACH® products.

65.     Likewise, it is undisputed that ACS is not in privity with Coach, has no rights under the Coach License Agreement, and cannot assert any rights under the Coach License Agreement.

66.     ACS asserts, including in its November 2023 Letters, that is has a right to take possession of, dispose of, and sell certain tech accessories bearing the COACH® Marks without Coach's license, consent or authorization.

67.     On information and belief, in view of at least the Kate Spade Action concerning similar products, ACS's exercise of that purported right is imminent and impending and/or actual. ACS has threatened to use and, on information and belief, is using the COACH® Marks without Coach's license, consent or authorization.

68.     ACS has threatened to use and/or is using the COACH® Marks, in connection with the sale, offering for sale, distribution, and advertising of goods, in a manner that is likely to cause confusion with Coach's use of the COACH® Marks among ordinary consumers as to the source, sponsorship, affiliation, or approval of Coach.

69.     ACS's threatened use and/or actual use of the COACH® Marks constitutes a reproduction, counterfeit, copy, or colorable imitation of Coach's use of the COACH® Marks.

70.     ACS's unlicensed, un-consented to, and otherwise unauthorized threatened use of the COACH® Marks is imminent and impending, and likely to cause confusion, mistake, or deceit.

71.     ACS has knowingly and willfully threatened to use and/or actually used the COACH® Marks to cause confusion, to cause mistake, or to deceive consumers.

72.     Based on ACS's aforesaid acts, ACS has publicly declared its intent to use COACH® Marks and such infringing use is imminent and impending and/or, upon information and belief, ACS is already using the COACH® Marks in commerce.

73.     By virtue of ACS's imminent, impending, and/or current use of the COACH® Marks in commerce, confirmed by its repeated threats of infringement, bringing the Kate Spade Action and seeking declaratory and injunctive relief therein, and other acts hereinabove described, ACS committed and continues to commit acts of trademark infringement in violation of, *inter alia*, Section 32(1)(a), 15 U.S.C. § 1114(1)(a).

74.     ACS's aforesaid acts of trademark infringement caused and will continue to cause damage and irreparable harm to Coach, and are likely to continue unabated, thereby causing further damage and irreparable harm to Coach and to the valuable goodwill symbolized by and associated with its distinctive COACH® Marks, unless enjoined and restrained by the Court.

75.     Coach has no adequate remedy at law and will suffer irreparable injury if ACS is allowed to wrongfully use Coach's COACH® Marks. Because of ACS's infringement of Coach's COACH® Marks, including ACS's threatened and/or actual willful and intentional conduct, Coach is entitled to injunctive relief, damages, extraordinary damages, fees, and costs pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

<u>**Second Cause of Action**</u>

**(Federal Unfair Competition and False Advertising under 15 U.S.C. § 1125(a))**

76.     Coach realleges and incorporates herein all allegations contained in the foregoing and following paragraphs of this Complaint as if fully set forth herein.

77.     ACS's unlicensed, un-consented to, and otherwise unauthorized imminent and impending and/or current copying and use of the COACH® Marks in connection with its threatened possession, distribution, disposal, offer for sale, sale and/or provision of the Alleged Collateral and/or other Infringing Products constitutes a false and misleading designation of origin and a false and misleading representation of facts, which:

a.      is likely to and/or is in fact causing confusion, mistake, or deceiving consumers and the public as to the affiliation, connection, or association of ACS with Coach, or as to the origin, sponsorship, or approval of ACS's goods or commercial activities by Coach; and

b.      in any actual or planned commercial advertising or promotion, would and does misrepresent the nature, characteristics, or qualities of Coach's goods, services, or commercial activities.

78.     ACS has knowingly and willfully threatened to copy and use and/or actually copied and used the COACH® Marks to cause confusion, to cause mistake, or to deceive consumers.

79.     Based on ACS's aforesaid acts, ACS has publicly declared its intent to copy and use COACH® Marks and, upon information and belief, ACS is either already using COACH® Marks in commerce or such infringing use is imminent and impending.

80.     By virtue of ACS's imminent, impending, and/or current copying and use of the COACH® Marks in commerce, confirmed by the acts hereinabove described, ACS committed and continues to commit acts of unfair competition and false advertising in violation of, *inter alia*, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

81.     ACS's aforesaid acts of unfair competition and false advertising caused and will continue to cause damage and irreparable harm to Coach, and are likely to continue unabated, thereby causing further damage and irreparable harm to Coach and to the valuable goodwill symbolized by and associated with its distinctive COACH® Marks, unless enjoined and restrained by the Court.

82.     Coach has no adequate remedy at law and will suffer irreparable injury if ACS is allowed to continue to wrongfully use Coach's COACH® Marks.

83.     Because of ACS's unfair competition and false advertising, including ACS's willful and intentional conduct, Coach is entitled to injunctive relief, damages, extraordinary damages, fees, and costs pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

**<u>Third Cause of Action</u>**

**(Declaratory Judgment)**

84.     Coach realleges and incorporates herein all allegations contained in the foregoing and following paragraphs of this Complaint as if fully set forth herein.

85.     As explained above, the Coach License Agreement expired by its terms on June 30, 2023.

86.     Consequently, all of Vinci's rights to use the COACH® Marks terminated and reverted to Coach as Licensor, and, except for limited circumstances not pertinent here, Vinci and all of its associated entities and individuals, including but not limited to ACS, were required to cease and permanently discontinue any use of the COACH® Marks in connection with

manufacturing, advertising, promoting, offering to sell, selling, distributing, or dealing in or with Licensed Merchandise, *i.e.*, tech accessories. *See* Coach License Agreement, § 11.1(a).

87.     ACS contends that it has the right to take possession of, sell, and dispose of Coach branded products in Vinci's possession or in process without regard to the fact that these actions are prohibited by the Coach License Agreement and applicable law, particularly given Coach's famous and incontestable trademark rights.

88.     ACS's contentions are wrong.

89.     As an initial matter, trademark licenses are personal to the licensee and are not assignable by the licensee absent express consent from the licensor, as a matter of federal law. As this Court recognized in the Kate Spade Action, "[KSNY] negotiated for very detailed and specific rights upon termination. And the notion that [KSNY's trademark] rights will be superseded by a credit relationship with which Kate Spade had nothing to do with seems . . . to be inequitable." Kate Spade Action, Sept. 20, 2023 Hearing, 58:14-18.

90.     Similarly, Coach negotiated very detailed and specific rights upon expiration of the Coach License Agreement, which cannot be superseded by any security interest ACS has in the Alleged Collateral.

91.     Further, it is undisputed that Coach never consented to any assignment of the Coach License Agreement. It is further undisputed that Coach never granted ACS any contractual right to use or sell COACH® merchandise. Therefore, regardless of whatever security interest ACS allegedly has in Vinci's property, ACS has no rights in any of Coach's property, including Coach's trademarks, or any licenses to use them.

92.     In addition, ACS is falsely and baselessly representing itself as the legal successor to Siena and its rights in, to, and under the Siena Consent Agreement. ACS does not meet the legal definition of successor with regard to Siena's rights, and its contentions to the contrary are nonsensical and contradict both ACS's own admissions in the Kate Spade Action and the relevant documentary evidence.

93.     Further, any security interest that ACS has in the Alleged Collateral is subject in all respects to and limited to Vinci's rights in the Alleged Collateral as determined under the Coach License Agreement and applicable law.

94.     Because Vinci defaulted as set forth above and the Coach License Agreement expired (among other reasons), Vinci's rights in the licensed merchandise and in process orders, *i.e.*, the Alleged Collateral, have been substantially restricted and limited by operation of numerous provisions contained in the Coach License Agreement (examples of which are set forth above).

95.     Because (among other reasons) Vinci currently has no right to dispose of or sell any of the Alleged Collateral, ACS similarly has no such right.

96.     This Court determined in the Kate Spade Action that as a result of KSNY's termination of the KSNY License Agreement, neither Vinci nor ACS had any right "to market or sell products bearing defendant's mark."  (Kate Spade Action, Sept. 20, 2023 Hearing, 54:16-20). The same conclusion applies here.

97.     Because the Coach License Agreement expired, neither Vinci nor ACS has any right to market or sell products bearing Coach's COACH® Marks.

98.     Accordingly, ACS does not have any license in any of the Alleged Collateral and has no right to seize, take possession of, dispose of, or sell any of the Alleged Collateral.

99.     ACS's assertion of the right to possess, sell, and dispose of the Alleged Collateral, including in its November 2023 Letters, despite applicable law and this Court's contrary decision in the Kate Spade Action, constitutes a justiciable controversy between Coach and ACS.

100.    Coach thus seeks a declaration that (i) ACS is not the legal successor to Siena and its rights under the Siena Consent Agreement, (ii) ACS's security interest (if any) in the Alleged Collateral is subject in all respects to and limited to Vinci's rights in the Alleged Collateral as determined under the Coach License Agreement and applicable law, (iii) consequently, ACS does not have any license in the Alleged Collateral or any right to seize, take possession of, dispose of, or sell any of the Alleged Collateral or any other COACH® branded products, and (iv) therefore, ACS is unauthorized to copy or use, in any way, any of Coach's COACH® Marks.

101.     Coach seeks a further declaration that ACS's use, impending use, imminent use, and publicly documented intended use of Coach's COACH® Marks, including in connection with ACS's efforts to enforce its alleged rights in the Alleged Collateral, constitute intentional and willful trademark infringement, false designation of origin, unfair competition, false advertising, misappropriation and trademark dilution in violation of federal and New York law.

102.     By reason of the foregoing, Coach is entitled to injunctive relief against ACS, restraining ACS from (i) seizing, taking possession of, disposing of or selling, any COACH® branded products; and (ii) engaging in any other acts of trademark infringement against Coach.

### Fourth Cause of Action

(New York Trademark Infringement, N.Y. Gen. Bus. Law § 360)

103.     Coach realleges and incorporation herein the allegations contained in the foregoing and following paragraphs of this Complaint as if fully set forth herein.

104.     The COACH® Marks are valid protectable trademarks under New York law (as well as under the Lanham Act).

105.     The COACH® Marks are distinctive and famous. A significant number of the consuming public associate the COACH® Marks with a single source, Coach.

106.     ACS's imminent and impending use and/or actual use of the COACH® Marks is without Coach's license, consent or authorization.

107.     ACS's imminent and impending use and/or actual use of the COACH® Marks, in connection with the sale, offering for sale, distribution, and advertising of goods, is in a manner that is likely to cause confusion with Coach's use of the COACH® Marks among ordinary consumers as to the source, sponsorship, affiliation, or approval of Coach.

108.     ACS's imminent and impending use and/or actual use of the COACH® Marks is a reproduction, counterfeit, copy, or colorable imitation of Coach's use of the COACH® Marks.

109.     ACS's unlicensed, un-consented to, and otherwise unauthorized imminent and impending use and/or actual use of the COACH® Marks is likely to cause confusion, mistake, or deceit.

110.    ACS's imminent and impending use and/or actual use of the COACH® Marks is a knowing and willful use of the COACH® Marks to cause confusion, to cause mistake, or to deceive consumers.

111.    By virtue of ACS's acts hereinabove described, ACS will commit and/or is committing acts of trademark infringement in violation of N.Y. Gen. Bus. Law § 360.

112.    ACS's aforesaid acts of trademark infringement caused and will continue to cause damage and irreparable harm to Coach, and are likely to continue unabated, thereby causing further damage and irreparable harm to Coach and to the valuable goodwill symbolized by and associated with its distinctive COACH® Marks, unless enjoined and restrained by the Court.

113.    Coach has no adequate remedy at law and will suffer irreparable injury if ACS is allowed to wrongfully use Coach's COACH® Marks.

## Fifth Cause of Action

(New York Trademark Dilution, N.Y. Gen. Bus. Law § 360-L)

114.    Coach realleges and incorporates herein the allegations contained in the foregoing and following paragraphs of this Complaint as if fully set forth herein.

115.    The COACH® Marks are valid, protectable trademarks that are distinctive and have acquired further secondary meaning through widespread sales and marketing. A significant number of the consuming public associate the COACH® Marks with a single source, Coach. Thus, the COACH® Marks are extremely strong marks.

116.    ACS's imminent and impending use and/or actual use of the COACH® Marks is likely to impair the distinctiveness of the COACH® Marks because the ordinary consumer is likely to perceive the Alleged Collateral and/or other Infringing Products bearing the COACH® Marks as substantially similar to Coach's Authorized Products cases bearing the identical COACH® Marks.

117.    Accordingly, ACS will and/or has violated New York General Business Law § 360-L, which states:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

118.    Because of ACS's imminent and impending and/or actual dilution of Coach's COACH® Marks, including Vinci's willful and intentional conduct, Coach is entitled to injunctive relief under New York General Business Law § 360-L.

### Sixth Cause of Action

(Common Law Unfair Competition)

119.    Coach realleges and incorporates herein the allegations contained in the foregoing and following paragraphs of this Complaint as if fully set forth herein.

120.    ACS's unlawful and unauthorized imminent and impending use and/or actual use and imitation of the COACH® Marks in connection with the sale, offering for sale, distribution, and advertising of competing, infringing tech accessories (*i.e.*, the Infringing Products), constitutes infringement, passing off, copying, imitation, and misappropriation of Coach's intellectual property, unjust enrichment, and unfair competition with Coach in violation of Coach's rights under the common law of the State of New York and other states of the United States.

121.    ACS's willful acts of misrepresentation, fraud, and deceit have unjustly enriched ACS by exploiting Coach's reputation in the market, caused harm to Coach, and violated Coach's rights.

### Jury Demand

Plaintiffs Coach IP Holdings, LLC, Coach Services, Inc. and Tapestry, Inc. request a jury trial of all issues that may be tried to a jury in this action.

### Prayer for Relief

Plaintiffs Coach IP Holdings, LLC, Coach Services, Inc. and Tapestry, Inc. thus pray for an Order and Judgment:

a.      Entering a temporary, preliminary, and permanent injunction enjoining ACS, their officers, shareholders, agents, servants, employees, attorneys, successors and assigns, affiliates, suppliers, manufacturers, distributors, business partners, e-tailers, retailers, lenders, creditors, and those in privity with ACS, and those persons in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise, from manufacturing, marketing, distributing, or selling phone cases or other tech accessories using the COACH® Marks, or any other products that use, imitate, or copy any of the COACH® Marks;

b.      Entering a temporary, preliminary, and permanent injunction enjoining ACS, as well as their officers, shareholders, agents, servants, employees, attorneys, successors and assigns, affiliates, suppliers, manufacturers, distributors, business partners, e-tailers, retailers, lenders, creditors, and those in privity with ACS, and those persons in active concert or participation with any of them who receive actual notice of the judgment by personal service or otherwise, from directly or indirectly falsely stating (in writing, verbally, or otherwise) to suppliers, factory manufacturers, distributors, and/or customers that ACS is authorized to produce, manufacture, advertise, distribute, offer for sale, or sell Infringing Products or any other product bearing the COACH® Marks;

c.      Declaring that (i) ACS is not the legal successor to Siena and its rights under the Siena Consent Agreement, (ii) ACS's security interest (if any) in the Alleged Collateral is subject in all respects to and limited to Vinci's rights in the Alleged Collateral as determined under the Coach License Agreement and applicable law, (iii) consequently, ACS does not have any license in the Alleged Collateral or any right to seize, take possession of, dispose of, or sell any of the Alleged Collateral or any other Coach branded products, and (iv) therefore, ACS is unauthorized to copy or use, in any way, any of Coach's COACH® Marks;

d.      Declaring that ACS's use, impending use, imminent use, and documented intended use of Coach's COACH® Marks, including in connection with ACS's efforts to enforce its alleged rights in the Alleged Collateral, constitute intentional and willful trademark

infringement, false designation of origin, unfair competition, false advertising, misappropriation and trademark dilution in violation of federal and New York law;

     e.     Directing ACS to file with this Court and serve on Coach's counsel of record within 30 calendar days after service of an injunction, a report under oath setting forth in detail the manner and form in which Vinci and ACS have complied with the injunction;

     f.     Directing that (i) all point-of-sale materials, labels, signs, boxes, prints, catalogues, line sheets, marketing materials, internet web pages, metatags, packages, papers, other trade dress, and advertisements in the possession of control of ACS comprising or bearing images, illustrations, or representations of the Infringing Products, the COACH® Marks, or the Coach name be delivered to Coach's counsel in accordance with written instructions from Coach; (ii) ACS disclose the identities of the vendors, manufacturers, distributors, suppliers, retailers, and e-commerce partners (if any) of the Infringing Products; and (iii) all Infringing Products be delivered to Coach in accordance with written instructions from Coach;

     g.     Ordering an accounting of ACS's profits (if any) arising from ACS's unfair competition and trademark infringement;

     h.     Ordering an award of ACS's profits (if any) to Coach, including disclosure of the number of Infringing Products sold and an accounting of the gross revenue derived from sale of the Infringing Products;

     i.     Ordering an award of damages to Coach;

     j.     Ordering an award of treble the actual damages awarded for use of a counterfeit mark pursuant to 15 U.S.C. § 1117(b). Coach reserves the right to elect, any time before final judgment, statutory damages under 15 U.S.C. § 1117(c) in lieu of actual damages and profits;

     k.     In the alternative to actual damages and profits, ordering an award of statutory damages in an amount of not more than $2,000,000 per counterfeit mark per type of services and/or goods sold or offered for sale by ACS;

     l.     Ordering pre-judgment and post-judgment interest on the above damage awards;

m.   Ordering an award of costs and reasonable attorneys' fees and expenses incurred by Coach in connection with this action; and

n.   Ordering such other and further relief that this Court may deem just.

Dated: New York, New York                Respectfully submitted,
       December 1, 2023

**BRYAN CAVE LEIGHTON PAISNER LLP**

By:    */s/ Thomas J. Schell*
     Christine Cesare          (Bar No. 1990134)
     Thomas J. Schell         (Bar No. 2991149)
     Jane Ernst                    (Bar No. 5927009)
     1290 6th Ave,
     New York, NY 10104
     Tel: (212) 541-2000
     cbcesare@bclplaw.com
     tjschell@bclplaw.com
     jane.ernst@bclplaw.com

*Attorneys for Plaintiffs*