**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ACS Group Acquisitions LLC and Vinci Brands LLC,**<br><br>Defendants.<br><br>**Vinci Brands LLC,**<br><br>Counterclaim Defendants,<br><br>v.<br><br>**Coach Services, Inc. and Case-Mate, Inc.**<br><br>Counter-Defendants. | Civil Action No.: 1:23-cv-10612-LGS |

**MEMORANDUM OF LAW OF COACH SERVICES, INC., IN SUPPORT OF ITS MOTION TO DISMISS VINCI BRANDS LLC'S AMENDED COUNTERCLAIMS**

**BRYAN CAVE LEIGHTON PAISNER LLP**
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 541-2000
Fax: (212) 541-1497

*Attorneys for Plaintiffs Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc.,*

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....... 1

VINCI'S ALLEGATIONS ....... 2

LEGAL STANDARD ....... 4

ARGUMENT ....... 5

POINT I: VINCI'S BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS SHOULD BE DISMISSED ....... 5

A. Vinci Cannot State a Breach of Contract Claim Because It Admits It Did Not Perform Its Obligations Under the License Agreement. ....... 5

B. Vinci Cannot State a Claim for Breach of Section 11 of the License Agreement. ....... 8

C. Vinci Cannot State a Claim for Breach of Contract Based on Coach's Cancellation of Its Orders from Vinci. ....... 10

POINT II: VINCI'S TORTIOUS INTERFERENCE CLAIMS SHOULD BE DISMISSED. ....... 11

A. Vinci Has Not Stated a Claim for Tortious Interference with Contract. ....... 11

B. Vinci Has Not Stated a Claim for Tortious Interference with Prospective Business Advantage. ....... 12

CONCLUSION ....... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
651 F. Supp. 155 (S.D.N.Y. 2009) ....................11

*Adeghe v. Procter & Gamble Co.*,
2024 WL 22061 (S.D.N.Y. Jan. 2, 2024) ....................8

*Am. Para Prof'l Sys. v. Hooper Holmes, Inc.*,
13 A.D.3d 167 (1st Dep't 2004) ....................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................4

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....................2

*Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*,
631 F.3d 42 (2d Cir. 2011)....................5

*Discover Grp., Inc. v. Lexmark Internat'l, Inc.*,
333 F. Supp. 27 78, 86 (E.D.N.Y. 2004) ....................13

*Dorsett-Felicelli, Inc. v. County of Clinton*,
2011 WL 1097859 (N.D.N.Y. Mar. 22, 2011) ....................9

*Ez–Tixz, Inc. v. Hit–Tix*,
969 F. Supp. 220 (S.D.N.Y. 1997) ....................9

*Goldhirsh Grp., Inc. v. Alpert*,
107 F.3d 105 (2d Cir. 1997)....................12, 13

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
50 N.Y.2d 183 (1980) ....................13

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
52 N.Y.2d 105 (1981) ....................6

*Lama Hldg. Co. v. Smith Barney Inc.*,
88 N.Y.2d 413 (1996) ....................11

*Leadsinger, Inc. v. Cole*,
2006 WL 2320544 (S.D.N.Y. Aug. 10, 2006) ........ 11, 12

*Millar v. Ojima*,
354 F. Supp. 2d 220 (E.D.N.Y. 2005) ........ 11

*P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*,
232 F. Supp. 2d 220 (S.D.N.Y. 2002) ........ 12

*R.H. Damon & Co. v. Softkey Software Prods., Inc.*,
811 F. Supp. 986 (S.D.N.Y. 1993) ........ 5

*Reiburn v. Roseman*,
22 N.Y.2d 143 (1968) ........ 7

*Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.*,
23 A.D.3d 162 (1st Dep't 2005) ........ 13

*Silverman v. Silverman*,
249 A.D.2d 378 (2d Dep't 1998) ........ 6, 7

**Statutes**

28 U.S.C. § 2201(a) ........ 5

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........ 1

**PRELIMINARY STATEMENT**

This memorandum of law is submitted by Coach Services, Inc. ("Coach") in support of its motion to dismiss Vinci Brands LLC's ("Vinci") Amended Counterclaims, ECF No. 103 (the "Counterclaims") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

On June 30, 2023, Coach's License Agreement with Vinci, under which it granted Vinci a license to manufacture and distribute Coach branded mobile phone accessories, expired. At that time, Vinci owed Coach $597,849.46 in unpaid Guaranteed Minimum Royalties ("GMR") and Image Fund Payments. Coach had sent a Notice of Non-Payment to Vinci on June 15, 2023 for this amount, and Vinci failed to pay it within ten days, constituting an Event of Default. More than one year later, Vinci has not paid Coach *any* of the unpaid royalties. Yet Vinci recognizes that it owes Coach *something*, and its failure to pay *anything* constitutes non-performance of its obligations under the License Agreement. For this reason alone, Vinci's breach of contract claims must be dismissed. Even more, Vinci asserts a supposed right to renegotiate the GMR, but that right is based on an unenforceable agreement to agree that must be excised from the License Agreement, and has no bearing on the unpaid Image Fund Payments, which Vinci has also not made.

Vinci's breach of contract claims fail on their own terms as well. Vinci does not identify any obligations in Section 11 of the License Agreement that Coach failed to perform, and provides no details about the non-cancelable orders that Coach supposedly canceled, including the items that were ordered, the dates they were ordered, the price of the orders, and the steps it took to fulfill the orders.

Additionally, Vinci fails to state a claim for tortious interference. Vinci has neither identified any specific provisions of agreements with which Coach has allegedly interfered as required for tortious interference with contract, nor adequately pled that Coach acted with the sole

purpose of harming Vinci or with wrongful means, as required for tortious interference with prospective business advantage.

The Court should dismiss the Counterclaims in their entirety.

## VINCI'S ALLEGATIONS

On January 7, 2019, Coach's parent company Tapestry, Inc. and Vinci's predecessor in interest, Incipio, LLC entered into a License Agreement (the "License Agreement"),[1] pursuant to which, Coach granted Vinci "a license to 'use the Licensed Mark(s) in the Territory as a trademark(s)' in connection with the manufacture, advertising, merchandising, promotion, sale and distribution of Approved Licensed Merchandise to Approved Customers." Counterclaims ¶¶ 10, 11 (quoting License Agreement § 2.1(a)).

The Initial Term of the License Agreement was four Contract Years, and, among other payments, Vinci was required to pay Coach GMR for each Contract Year on a quarterly basis. ECF No. 13-1, License Agreement §§ 3.1(a), 8.1. Under Schedule 8 of the License Agreement, GMR for Contract Year 4 (extending from July 1, 2022 to June 30, 2023) was the greater of [redacted] ECF No. 13-1, License Agreement § 8.3(a), sch. 8.

In addition to GMR, Vinci was required to make an Image Fund Payment each Contract Year "as a contribution towards" "an advertising and promotional program for the Licensed Mark(s)." ECF No. 13-1, License Agreement § 7.2. Under Section 7.2, "The Image Fund Payment will be computed, invoiced, and payable as set forth in Schedule 7.2." ECF No. 13-1, License

---

[1] The Counterclaims repeatedly refer to and rely on the License Agreement, rendering it integral to the pleading. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (the court may consider a document on motion to dismiss if the complaint "relies heavily upon its terms and effect," such that it is "integral" to the complaint); ECF No. 13-1, License Agreement.

Agreement § 7.2. Schedule 7.2, in turn, states in full, "In each Contract Year, Licensee shall pay to Licensor [redacted] as a contribution to Licensor's image and advertising campaign." ECF No. 13-1, License Agreement, sch. 7.2.

Pursuant to Section 3.2(a), if Vinci failed to pay any funds it owed to Coach, such a failure would constitute an Event of Default under the License Agreement upon Vinci's failure to cure such default upon ten days' notice.[2] ECF No. 13-1, License Agreement § 3.2(a).

On June 15, 2023, Coach sent Vinci a Notice of Non-Payment noticing Vinci that it owed $597,849.46 in GMR and Image Fund Payments. Counterclaims ¶ 40. When Vinci failed to pay this amount by June 25, 2023, such failure constituted an Event of Default. Vinci does not allege that it ever paid the owed GMR payments, instead, wrongly, claiming that "the amount of GMR Vinci owes is in dispute." Counterclaims ¶ 109.

On June 30, 2023, the License Agreement expired by its own terms, and the following day, Coach sent Vinci a Notice of Expiration of Coach License Agreement notifying Vinci that the License Agreement expired on June 30, and would not be renewed. Counterclaims ¶¶ 23, 41. Pursuant to Section 11.1(a) of the License Agreement, upon the expiration of the License Agreement, all of Vinci's rights under the License Agreement reverted to Coach. Section 11.1(d) provided Coach the option "to purchase all or any part of [Vinci's] . . . inventory of Approved Licensed Merchandise which is completed and which remains on hand at such expiration or termination date and which is not subject to written orders received from customers on the date of termination or expiration of" the License Agreement" (the "Inventory Purchase Option"). ECF No. 13-1, License Agreement § 11.1(d).

[2] After the first such instance, notice would not have been required for nonpayment to constitute an Event of Default. ECF No. 13-1, License Agreement § 3.2(a).

Additionally, while Vinci was permitted to "complete . . . production of Approved Licensed Merchandise which is in process, or for which written orders have been received from customers" as of the date of the expiration of the License Agreement, "such Approved Licensed Merchandise will be deemed subject to an Inventory Purchase Option." ECF No. 13-1, License Agreement § 11.2.

On July 3, 2023, Coach informed Vinci that it intended to exercise the Inventory Purchase Option, and on October 25, 2023, Coach exercised the Inventory Purchase Option. Counterclaims ¶¶ 42, 45, 51. Coach exercised this option in regard to all Licensed Merchandise subject to the License Agreement, extinguishing any right of Vinci's to sell such merchandise. Counterclaims ¶ 46. Under Section 11.1(d), Coach would compensate Vinci for all merchandise subject to the Inventory Purchase Option.

As of the expiration of the License Agreement on June 30, 2023, Coach also had in place purchase orders from Vinci pursuant to Section 4.4. Counterclaims ¶ 44. On July 3, 2024, Coach noticed to Vinci that it would cancel these orders if the merchandise was not delivered by August 2023. Counterclaims ¶ 44. "When Vinci was unable to deliver Coach's orders by that date . . . Coach canceled the orders." Counterclaims ¶ 84.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

# ARGUMENT

## POINT I: VINCI'S BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS SHOULD BE DISMISSED

### A. Vinci Cannot State a Breach of Contract Claim Because It Admits It Did Not Perform Its Obligations Under the License Agreement.

Vinci's breach of contract and declaratory judgment claims,[3] must be dismissed because, according to its own allegations, Vinci failed to perform under the License Agreement. Under New York law, to plead a claim for breach of contract, a plaintiff must plausibly allege: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). Vinci fails to plead the second element, its performance. *See R.H. Damon & Co. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986, 991 (S.D.N.Y. 1993) ("When pleading a claim for the breach of an express contract, []the complaint must contain some allegation that the plaintiffs actually performed their obligations under the contract.").

Vinci's primary obligation under the License Agreement was to pay Coach its licensing fees, including the GMR as defined in Schedule 8. As Vinci alleges, it "agreed to pay [Coach] Guaranteed Minimum Royalties ('GMR') for each Contract Year . . . in accordance with the schedule set forth therein." Counterclaims ¶ 14.

But Vinci acknowledges it did not meet its obligation to pay licensing fees. Vinci alleges that, on June 15, 2023, Coach sent it "a Notice of Non-Payment claiming that Vinci owed $597,849.46 in GMR and Image Fund Payments." Counterclaims ¶ 40. Vinci admits it never paid

---

[3] Vinci's Third Claim for Relief is mislabeled as a claim for "Declaratory Judgment." The claim does not seek a declaration of "the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a). Rather, it seeks an order "declaring that Coach must renegotiate the GMR." Counterclaims ¶ 109. Thus, Vinci's Third Claim is a contract claim seeking specific performance.

this amount, instead claiming that "the amount of GMR Vinci owes is in dispute" and that it "is entitled to a declaratory judgment declaring that Coach must renegotiate the GMR." *Id.* ¶ 109.

Vinci attempts to explain its admitted non-performance by alleging that "in Schedule 8 of the License Agreement, '[t]he parties agree[d] to renegotiate in good faith the Guaranteed Minimum Royalties for a given Contract Year if…[t]here is at least 10% loss of distribution in such given Contract Year that is beyond Licensee's control…or…[t]here is an unexpected variance (favorable or negative) in launch years or product introduction, or there are material device shortages or recalls outside of Licensee's control.'" Counterclaims ¶ 15.

Vinci misses, however, that Schedule 8 of the License Agreement does not excuse its failure to perform for three reasons: (1) the renegotiation clause it relies on is an unenforceable agreement to agree that must be excised from the License Agreement; (2) Vinci, as it admits, still owed Coach *something* for the GMR, yet paid *nothing*; and (3) Vinci never paid Coach the required Image Fund Payments, which it does not allege were in dispute.

*First*, "it is rightfully well settled in the common law of contracts . . . that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981); *see also Silverman v. Silverman*, 249 A.D.2d 378, 379 (2d Dep't 1998) ("It is well settled that an agreement to agree is unenforceable because it is indefinite and uncertain."). This rule applies equally where an "agreement provid[es] that the parties agree to renegotiate" a term of the agreement upon the occurrence of a triggering event. *Silverman*, 249 A.D.2d at 379.

This is exactly what is alleged here—that "[t]he parties . . . agree[d] to renegotiate in good faith the Guaranteed Minimum Royalties for a given Contract Year" upon the occurrence of certain triggering events. ECF No. 13-1, License Agreement, sch. 8. This is plainly an unenforceable

agreement to agree.

In *Silverman*, "[t]he parties' separation agreement provided . . . that the parties agreed to renegotiate the maintenance provisions one year after the plaintiff's remarriage." 249 A.D.2d at 379. When the plaintiff remarried years later and sought enforcement of the renegotiation provision, the court held that the supposed obligation to renegotiate could not be enforced. *Id.* ("The provision in the separation agreement providing that the parties agree to renegotiate the maintenance provisions one year after the plaintiff's remarriage is unenforceable.") The same is true here.

More, where, as here, "an agreement to agree and is unenforceable because it is indefinite and uncertain," "[t]hat portion of the agreement which is void for indefiniteness may be excised without affecting the validity of the remainder." *Reiburn v. Roseman*, 22 N.Y.2d 143, 145 (1968); *see also Silverman*, 249 A.D.2d at 379 (where "an agreement to agree is unenforceable because it is indefinite and uncertain," the offending provision "must be excised from the . . . agreement"). Doing so here, this Court would excise the renegotiation provision in Schedule 8 while preserving the remainder of Schedule 8 and the Agreement as a whole. The surviving portion of Schedule 8 defines the payment amount for Contract Year 4 as the "[g]reater of [redacted]" ECF No. 13-1, License Agreement, sch. 8. Thus, as alleged by Vinci, it "owed $597,849.46 in GMR and Image Fund Payments." Counterclaims ¶ 40. Because, according to Vinci's allegations, it did not pay this amount—indeed it did not pay *anything*—it did not tender performance under the License Agreement and cannot succeed on a claim for breach of contract.

*Second,* Vinci does not allege that it was excused from making *any* payment of GMR. Rather, it alleges that "the amount of GMR Vinci owes is in dispute." Counterclaims ¶ 109. Thus,

Vinci concedes that it owes Coach some amount of GMR. Yet Vinci has not alleged that it has paid Coach even those fees that Vinci acknowledges it owes. This complete failure to pay *anything*, when Vinci acknowledges that it owes *something*, constitutes non-performance, and making it impossible for Vinci to meet the second element of a breach of contract claim.[4]

*Third*, even if Vinci were correct that the GMR amount was subject to renegotiation—which it is not—it still could not claim that it has performed under the License Agreement because it has paid *none* of the "$597,849.46 in GMR and *Image Fund Payments*." Counterclaims ¶ 40 (emphasis added). Vinci alleges only that "the amount of *GMR* Vinci owes is in dispute." Counterclaims ¶ 109 (emphasis added). It does not allege that it has paid the amount due for the Image Fund Payment and does not allege that that the Image Fund payment amount is disputed. Nor could it. Unlike Schedule 8 defining the GMR, Schedule 7.2 defining the Image Fund Payment does not purport to provide any ground for renegotiation. Vinci's failure to pay the Image Fund Payment, alone, is sufficient to constitute non-performance and defeat its claim for breach of contract.

**B. Vinci Cannot State a Claim for Breach of Section 11 of the License Agreement.**

Vinci claims that, under Article 11 of the License Agreement, Coach breached its post-expiration rights to: (1) complete production of Licensed Merchandise "which is in process, or for which written orders have been received by customers" as of the date the expiration occurred; and (2) sell Licensed Merchandise that "was subject to a written order from a customer" as of the date the expiration occurred. Counterclaims ¶ 16.

But, Vinci does not allege a single breach of Article 11 by Coach. Instead, it asserts that

[4] While Vinci states that it "performed all of its material obligations under the License Agreement or is otherwise excused," those conclusory allegations are contradicted by the remainder of the pleading and are not entitled to a presumption of truth. Counterclaims ¶¶ 41, 69, 80, 87; *Adeghe v. Procter & Gamble Co.*, 2024 WL 22061, at *4 (S.D.N.Y. Jan. 2, 2024).

that Coach sent a series of notices to Vinci in which Coach asserted its rights under the License Agreement. *See* Counterclaims ¶¶ 41-52. "Under New York law, a breach of contract occurs where a party fails 'to perform its obligations under a valid and binding contract.'" *Dorsett-Felicelli, Inc. v. County of Clinton*, 2011 WL 1097859, at *3 (N.D.N.Y. Mar. 22, 2011) (quoting *Ez–Tixz, Inc. v. Hit–Tix*, 969 F. Supp. 220, 225 (S.D.N.Y. 1997)). Vinci has not identified a single obligation under Article 11 that Coach has failed to perform. Had it believed it had the right to sell the Licensed Merchandise, it could have simply done so, notwithstanding Coach's notices. That it did not do so, notwithstanding its positions in this lawsuit, shows that it knew at the time that Coach's notices were proper.

Additionally, Vinci's claim ignores that, under Section 11.2 of the License Agreement, any Licensed Merchandise produced under Article 11 is "subject to an Inventory Purchase Option." ECF No. 13-1, License Agreement § 11.2. This is fatal to Vinci's claim because Vinci acknowledges that Coach exercised the Inventory Purchase Option on October 25, 2023. Counterclaims ¶ 51.

Under the Inventory Purchase Option, Coach has the right "to purchase all or any part of Licensee's inventory . . . of Approved Licensed Merchandise or Promotion Products which is completed and which remains on hand at such expiration or termination date and which is not subject to written orders received from customers on the date of termination or expiration of this Agreement." ECF No. 13-1, License Agreement § 11.1(d).

Putting Sections 11.1(d) and 11.2 together, the only Licensed Merchandise *not* covered by the Inventory Purchase Option is existing inventory that is subject to a written purchase order on the date the License Agreement expires—Licensed Merchandise still in production is covered by Section 11.2, while Licensed Merchandise not subject to a written purchase order is covered by

Section 11.1(d). Yet, nowhere does Vinci allege that Coach stopped it from fulfilling existing orders with existing inventory after the expiration of the License Agreement. In fact, Vinci alleges that Coach confirmed, the day after the License Agreement expired, that "Vinci was not authorized to take any further action with respect to the manufacture, distribution, promotion or sale of Licensed Merchandise *other than those permitted under Section 11 of the License Agreement*." Counterclaims ¶ 41.

### C. Vinci Cannot State a Claim for Breach of Contract Based on Coach's Cancellation of Its Orders from Vinci.

Vinci claims that Coach breached the License Agreement by cancelling supposedly non-cancelable orders that it had placed with Vinci. *See* Counterclaims ¶¶ 96-101. But Vinci cannot rely on the License Agreement as a basis for this claim. Nothing in the License Agreement obligates Coach to place any orders with Vinci or incorporates such orders into the License Agreement. Section 4.4 of the License Agreement is clear that "Licensed Merchandise . . . may be ordered" by Coach, but does not obligate it to do so. ECF No. 13-1, License Agreement § 4.4. While Schedule 4.4 provides certain terms that any such sale must adhere to, nothing in that Schedule requires any orders either. *See* ECF No. 13-1, License Agreement, sch. 4.4. Thus, any failure to consummate such orders, if they exist, are not breaches of the License Agreement.

And Vinci has failed to sufficiently allege the terms of any contract that Coach could have breached. The Counterclaims are devoid of details about the supposed orders: there are no allegations about the items that were ordered, the dates they were ordered, the price of the orders, the steps it took to fulfill the order, nor anything else. All that Vinci has alleged is "that Coach itself had submitted certain non-cancelable purchase orders, which Vinci was required to produce and fulfill pursuant to Section 4.4 of the License Agreement" and that "Coach canceled the orders." Counterclaims ¶¶ 44, 84. Even under a liberal pleading standard, these allegations are woefully

insufficient to state a claim for breach of contract. *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 155, 184 (S.D.N.Y. 2009) (dismissing breach of contract claims where "plaintiffs fail to provide any facts about how this contract was formed, the date of formation, the consideration, or the contract's major terms").

**POINT II: VINCI'S TORTIOUS INTERFERENCE CLAIMS SHOULD BE DISMISSED.**

**A. Vinci Has Not Stated a Claim for Tortious Interference with Contract.**

"Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Hldg. Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996). Vinci does not state a claim of tortious interference with contract against Coach because Vinci does not adequately allege an actual breach of any contracts, Coach's inducement of any such breaches, or that Coach's actions lacked justification.

First, Vinci fails to "identify a specific contractual term that was breached," as is required to state a claim for tortious interference with contract. *Millar v. Ojima*, 354 F. Supp. 2d 220, 230 (E.D.N.Y. 2005) (internal quotation marks omitted). Instead, Vinci merely alleges, without reference to any actual parties or agreements, that it had contracts with suppliers and customers (in the form of purchase orders and awards), that suppliers "refused to deliver the contracted-for merchandise," and that customers "refused to take delivery and pay for the merchandise they had ordered." Counterclaims ¶¶ 59-60, 79-80. These allegations do not establish any specific terms that were breached, do not name any of these suppliers or customers or state that they were contractually obligated to do business with Vinci, or elucidate that the cancellation of any (unsubstantiated) orders breached any provision of any (unnamed) agreement. *See Leadsinger,*

*Inc. v. Cole*, 2006 WL 2320544, at *12 (S.D.N.Y. Aug. 10, 2006) (dismissing tortious interference claim where "plaintiff has failed to allege the relevant terms of the contracts" that were breached).

Second, Vinci fails to plausibly allege that Coach's actions lacked justification. The only specific actions that Vinci alleges Coach took—on information and belief—is "providing Case-Mate with a 'Letter of Authorization' . . . stating that Case-Mate was now Coach's exclusive licensee" and communicating "this message to Vinci's customers, suppliers, and distributors . . . when they expressed surprise and/or confusion." Counterclaims ¶¶ 66-67. But, even assuming these communications occurred, Coach was justified in making them because Case-Mate was the new exclusive licensee, as the Counterclaims acknowledges. *Id.* ¶¶ 23, 55. Coach had a legitimate right and reason to communicate that to suppliers and customers so they could plan for future orders. *Cf. P. Kaufmann, Inc. v. Americraft Fabrics, Inc.*, 232 F. Supp. 2d 220, 225 (S.D.N.Y. 2002) ("Seeking to protect a copyright by alerting a third party that the copyright is being infringed constitutes a justification defense to this claim.").

Vinci's conclusory assertion that Coach's actions were not justified because they were taken to deprive Vinci of its post-expiration rights does not save Vinci's claim. Counterclaims ¶ 134. For one thing, the Counterclaims lack any well-pleaded allegations explaining how Coach supposedly interfered with Vinci's post-expiration rights. Additionally, the Counterclaims show that Coach had a legitimate reason to share a letter of authorization with Case-Mate: Case-Mate was its only remaining licensee for mobile phone accessories. *Id.* ¶¶ 23, 55.

### B. Vinci Has Not Stated a Claim for Tortious Interference with Prospective Business Advantage.

To state a claim for tortious interference with prospective business advantage or relations, Vinci must allege, among other elements, that Coach "act[ed] with the sole purpose of harming [Vinci], or, failing that level of malice, uses dishonest, unfair, or improper means." *Goldhirsh*

*Grp., Inc. v. Alpert*, 107 F.3d 105, 108-09 (2d Cir. 1997). New York courts routinely grant motions to dismiss where, as here, the complaint fails "to include the necessary allegation that defendant's conduct was motivated solely by malice or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations." *Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co*., 23 A.D.3d 162, 163 (1st Dep't 2005) (affirming grant of motion to dismiss claim for tortious interference with prospective business relations); *see also Am. Para Prof'l Sys. v. Hooper Holmes, Inc*., 13 A.D.3d 167, 169 (1st Dep't 2004) (affirming dismissal of counterclaim for tortious interference with prospective business relations where "defendant does not allege that plaintiff used wrongful means such as physical violence, fraud, and lawsuits").

In this case, as in *Shared Communications Services of ESR and American Para Professional Systems*, Vinci fails to allege any non-conclusory facts that Coach used wrongful means or acted solely for the purpose of harming Vinci. As Vinci alleges, the Letter of Authorization and Coach communications do not reference Vinci; they concerned Case-Mate's role as a licensee. Coach had a legitimate interest in ensuring that suppliers and customers for Coach branded products were aware of Case-Mate's new relationship to Coach. Thus, in providing Case-Mate a letter of authorization it was not Coach's purpose (much less its "*sole* purpose") to harm Vinci. *See Goldhirsh Grp., Inc.*, 107 F.3d at 108-09. Even more, as here, "where the interference is intended at least in part to advance the competing interest of the interferer, no unlawful restraint of trade is effected, and the means employed are not wrongful." *Discover Grp., Inc. v. Lexmark Internat'l, Inc.*, 333 F. Supp. 27 78, 86 (E.D.N.Y. 2004) (quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 190-91 (1980)).

**CONCLUSION**

For the foregoing reasons, the Court should dismiss the Counterclaims with prejudice.

Dated: New York, New York
July 12, 2024

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**
By: *<u>/s/ Timothy R. Beyer</u>*
Christine Cesare
Bret Ruber
Jane Ernst
1290 Avenue of the Americas
New York, NY 10104
T: (212) 541-2000
E: cbcesare@bclplaw.com
E: bret.ruber@bclplaw.com
E: jane.ernst@bclplaw.com

Timothy R. Beyer (*pro hac vice*)
Adam B. Stern
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
T: (303) 866-0481
E: tim.beyer@bclplaw.com
E: adam.stern@bclplaw.com

Nicholas Bedo (*pro hac vice*)
One Atlantic Center, 14th Floor
1201 W. Peachtree Street, N.W., Ste. 1400
Atlanta, GA 30309
T: (404) 572-6670
E: nick.bedo@bclplaw.com

*Attorneys for Plaintiffs Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc.*