**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ACS Group Acquisitions LLC and Vinci Brands LLC,**<br><br>Defendants.<br><br>**Vinci Brands LLC,**<br><br>Counterclaim Defendants,<br><br>v.<br><br>**Coach Services, Inc. and Case-Mate, Inc.**<br><br>Counter-Defendants. | Civil Action No.: 1:23-cv-10612-LGS |

**REPLY MEMORANDUM OF LAW OF COACH SERVICES, INC. IN SUPPORT OF ITS MOTION TO DISMISS VINCI BRANDS LLC'S AMENDED COUNTERCLAIMS**

**BRYAN CAVE LEIGHTON PAISNER LLP**
1290 Avenue of the Americas
New York, New York 10104
Tel: (212) 541-2000
Fax: (212) 541-1497

*Attorneys for Plaintiffs Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT ....................................................................................................1

POINT I: VINCI'S BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS SHOULD BE DISMISSED ..................................................... 1

A. Vinci Has Not Alleged Its Performance Under The License Agreement... 1

B. Vinci Has Not Alleged Facts That, If True, Would Amount To A Breach Of Section 11. .................................................................... 5

C. Vinci Cannot State A Claim For Breach Of The License Agreement Based On Any Cancellation Of Coach's Orders. ........................................... 5

POINT II: VINCI'S TORTIOUS INTERFERENCE CLAIMS SHOULD BE DISMISSED. ................................................................................ 6

A. Vinci Has Not Stated A Claim For Tortious Interference With Contract... 6

B. Vinci Has Not Stated A Claim for Tortious Interference With Prospective Business Advantage. ................................................................... 8

CONCLUSION.................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
651 F. Supp. 155 (S.D.N.Y. 2009) ....................6

*Am. Para Prof'l Sys. v. Hooper Holmes, Inc.*,
13 A.D.3d 167 (1st Dep't 2004) ....................8

*DT Corp. v. Tyco Group, S.A.R.L.*,
23 N.Y.3d 497 (2014) ....................3

*GE Oil & Gas, Inc. v. Turbine Generation Services, L.L.C.*,
2016 WL 865318 (N.Y. Sup. Ct. Mar. 4, 2016) ....................3

*Goldhirsh Grp., Inc. v. Alpert*,
107 F.3d 105 (2d Cir. 1997)....................8

*I.S. Sahini, Inc. v. Scirocco Fin.*,
2005 WL 2414762 (S.D.N.Y. Sept. 28, 2005)....................8

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
52 N.Y.2d 105 (1981) ....................2

*Kirch v. Liberty Media Corp.*,
449 F.3d 388 (2d Cir. 2006)....................7

*L-7 Designs, Inc. v. Old Navy, LLC*,
964 F. Supp. 2d 299 (S.D.N.Y. 2013)....................3

*Leadsinger, Inc. v. Cole*,
2006 WL 2320544 (S.D.N.Y. Aug. 10, 2006)....................7

*Millar v. Ojima*,
354 F. Supp. 2d 220 (E.D.N.Y. 2005) ....................6, 7

*Noor Staffing Group, LLC v. Christoforou-Gioules*,
2022 WL 2101611 (N.Y. Sup. Ct. June 10, 2022)....................3

*R.H. Damon & Co. v. Softkey Software Prods., Inc.*,
811 F. Supp. 986 (S.D.N.Y. 1993) ....................1

*Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co.*,
23 A.D.3d 162 (1st Dep't 2005) ....................8

*Taboola, Inc. v. Ezoic Inc.*,
2021 WL 2041639 (S.D.N.Y. May 21, 2021) ....................6, 7

*Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co*.,
670 F. Supp. 491 (S.D.N.Y. 1987) ....................3

*Teachers Ins. and Annuity Assoc. v. Butler*,
626 F. Supp. 1229 (S.D.N.Y. 1986)....................3

**Statutes**

28 U.S.C. § 2201(a) ....................3

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)....................1

## PRELIMINARY STATEMENT

This reply memorandum of law is submitted by Coach[1] in support of its motion to dismiss Vinci's Counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The License Agreement provides for the orderly termination of Vinci's and Coach's relationship following the expiration of the agreement. Coach followed those provisions, notwithstanding Vinci's failure to pay, by allowing Vinci to exercise its post-termination rights and by exercising its Inventory Purchase Option. Vinci is simply disappointed with the outcome that it is no longer Coach's licensee and that third parties have chosen to direct their business elsewhere. This is not Coach's responsibility and certainly does not state claims for breach of contract or tortious interference. The agreement came to its natural end given its terms. Vinci's claims are misdirected at Coach and, for the reasons set forth below, are not viable causes of action. The motion to dismiss should be granted in its entirety.

## ARGUMENT

### POINT I: VINCI'S BREACH OF CONTRACT AND DECLARATORY JUDGMENT CLAIMS SHOULD BE DISMISSED

#### A. Vinci Has Not Alleged Its Performance Under The License Agreement.

Vinci cannot state a plausible breach of contract claim because it failed to perform. *See R.H. Damon & Co. v. Softkey Software Prods., Inc.*, 811 F. Supp. 986, 991 (S.D.N.Y. 1993). In the Motion, Coach explained that Vinci was *at a minimum* required to pay the fees that were not disputed—*i.e.*, Image Fund Payments and royalties (GMR) that Vinci believed were proper. Motion, at pp. 7-8. Vinci provides no convincing response or opposition to this. *See* ECF No. 127 ("Opposition"), at pp. 2-3. Rather, Vinci refers back to its conclusory allegations of performance in the Counterclaims and argues that it was excused from *all* of its payment obligations by Schedule 8. *Id.* This is insufficient to defeat

[1] All defined terms not otherwise defined herein shall have the meaning set forth in Coach's Motion to Dismiss, ECF No. 114 ("Motion").

the Motion. The Counterclaims demonstrate that Vinci acknowledges that it owes Coach *some* unpaid fees and, separately, Schedule 8 cannot excuse or suspend *all* of Vinci's payment obligations. Vinci's primary obligation under the License Agreement is to pay royalties and fees. *See* Counterclaims ¶ 13. Vinci acknowledges that it did not pay all of these. In June 2023, Coach sent Vinci a Notice of Non-Payment claiming that Vinci owed $597,849.46. *Id.* ¶ 40. In response, Vinci alleges that this number is merely "*in excess* of royalties that Vinci would owe." *Id.* ¶ 40 (emphasis added). While Coach does not concede that Vinci's allegation that this number is merely "in excess" of the actual amount owed is correct, its framing of the argument presupposes that Vinci *knows* it owes Coach *something.* However, Vinci has not alleged that it has paid *anything* to Coach. Accordingly, Vinci acknowledges it has not met its obligations under the License Agreement.

Vinci's argument that the renegotiation provision in Schedule 8 excuses Vinci's failure to make *any* payments is incorrect for two reasons. *First*, Schedule 8 only refers to the renegotiation of royalties (GMR). Vinci has failed to pay Image Fund Payments *in addition* to GMR. Image Fund Payments are not disputed by Vinci. *Cf.* Counterclaims ¶ 109 (alleging that "the amount of *GMR* Vinci owes is in dispute" and that it "is entitled to a declaratory judgment declaring that Coach must renegotiate the *GMR*" (emphasis added)). Accordingly, at a minimum Vinci's failure to pay Image Fund Payments is unexcused and, notwithstanding any argument about GMR, independently sufficient to demonstrate Vinci's nonperformance. Vinci concedes this point in the Opposition by failing to respond to or defend its failure to make Image Fund Payments.

*Second*, Vinci's failure to pay royalties (GMR) is also unexcused because the renegotiation provision is unenforceable. The renegotiation provision is an agreement to agree which leaves royalty payments, which are material terms of the License Agreement, to future negotiations. *See Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981) ("[I]t is rightfully well

settled in the common law of contracts in [New York] that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable").

Vinci's response that Schedule 8's renegotiation provision is akin to a "binding preliminary commitment" should be rejected as a matter of law. The License Agreement is not a preliminary commitment. It is a final, fully-integrated, fully-negotiated, long-form contract. This is not true of any of the cases to which Vinci cites: *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co*., 670 F. Supp. 491 (S.D.N.Y. 1987) (seeking to enforce *preliminary* "commitment letter" which required parties to negotiate in *separate* loan agreement); *DT Corp. v. Tyco Group, S.A.R.L*., 23 N.Y.3d 497, 502 (2014) (seeking to enforce term of settlement agreement which required parties to negotiate a *separate* contract); *Noor Staffing Group, LLC v. Christoforou-Gioules*, 2022 WL 2101611, *1-2 (N.Y. Sup. Ct. June 10, 2022) (seeking to enforce provision of employment agreement which required the parties to negotiate *separate* agreement); *GE Oil & Gas, Inc. v. Turbine Generation Services, L.L.C*., 2016 WL 865318, *5 (N.Y. Sup. Ct. Mar. 4, 2016) (seeking to enforce preliminary term sheet which required negotiation of *separate* joint venture agreement); *L-7 Designs, Inc. v. Old Navy, LLC*, 964 F. Supp. 2d 299, 307 (S.D.N.Y. 2013) (seeking to enforce SOW which required negotiation of *separate* license agreement); *Teachers Ins. and Annuity Assoc. v. Butler*, 626 F. Supp. 1229, 1232 (S.D.N.Y. 1986) (seeking to enforce provision of commitment letter which required parties to negotiate *separate* closing documents). Schedule 8 does not require the parties to negotiate a *separate* agreement beyond the four corners of the License Agreement and, thus, Vinci's citations are irrelevant and insufficient to overcome settled caselaw demonstrating that such provisions are unenforceable.[2]

[2] With respect to Vinci's declaratory judgment claim, Vinci fails to respond to Coach's point that such claim merely seeks specific performance and is not covered by 28 U.S.C. § 2201(a). Vinci's failure to respond to this argument is a concession that the "declaratory judgment claim" is actually a contract claim. As such, this claim also fails due to Vinci's non-performance of its payment obligations.

Seeking to further deflect from its non-performance Vinci offers the misguided argument that Section 11 is written in such a manner that pleading performance is not required to state a breach of contract claim under that provision. *First*, Vinci cites no legal precedent that would entitle Vinci to do away with the basic elements of a breach of contract cause of action merely because Section 11 survives termination of the License Agreement.

*Second*, the plain language of Section 11 contradicts Vinci's view. Sections 11.2 and 11.3 provide Vinci with a limited right to complete "production of Approved Licensed Merchandise" (License Agreement, ECF No. 13-1, § 11.2) and "if [Vinci] is not in default" exercise a "Royalty Option" (*id.* § 11.3). The plain language of Section 11 clearly contemplates that Vinci must perform under the License Agreement as the section allows Vinci to exercise certain post-termination rights only if it is not "in default". *Id.*

*Third*, a precondition to Vinci's exercise of *any* rights under Section 11 is compliance with Section 11.1. *Id.* § 11.1(c) ("The provisions of this Section 11.1 shall take precedence over any conflicting provision of this Agreement."). Pursuant to Section 11.1(b), "within *thirty (30) days* after the date either party notifies the other of its desire to terminate or not extend the Agreement," Vinci is required to provide numerous deliverables to Coach including, *inter alia*, a list of current accounts, a list of styles, and samples of styles, as well as complete and deliver an accurate schedule of Vinci's inventory. *Id.* § 11.1(b). Coach notified Vinci of the expiration of the License Agreement on July 1 , 2023. Counterclaims ¶ 53 ("On July 1, 2023, Coach sent Vinci a Notice of Expiration of Coach License Agreement [] notifying Vinci that the License Agreement had expired on June 30 and that Coach would not renew the Agreement."). This triggered the thirty-day period under Section 11.1(b). Vinci did not comply with this precondition as Vinci provided the required information *53 days* after it was notified that the License Agreement would not be extended. *Id.* ¶ 50 ("As of August 22, 2023, Vinci had provided Coach with all information required by Section 11 of the License Agreement.").

Accordingly, Vinci cannot exercise rights any under Section 11 or state a breach of contract because it has not performed its obligations under the License Agreement.

**B. Vinci Has Not Alleged Facts That, If True, Would Amount To A Breach Of Section 11.**

Vinci pleads no facts that, if true, would constitute a breach by Coach of any obligation to Vinci or that Coach prevented Vinci from exercising its post-termination rights. At most, Vinci states that Coach's actions may have caused suppliers and customers to fear doing business with Vinci. Opposition, at p. 6 n.4. However, third-parties' decisions to work with (or decline to work with) Vinci are irrelevant to Coach's performance of its obligations under the License Agreement. Vinci's failure to point to any actual language in Section 11 that Coach breached is a telling omission, which shows the insufficiency of Vinci's claims.

While Vinci argues generally that Coach "destroyed the benefit" Vinci was supposed to receive under Section 11, Vinci does not allege plausible facts that could support such a claim. Coach's remittance of a Notice of Coach's Rights did not plausibly "prohibit[] Vinci from selling Licensed Merchandise to third parties" (Counterclaims ¶ 42) where Coach specifically confirmed, the day after the License Agreement expired, that "Vinci was not authorized to take any further action with respect to the manufacture, distribution, promotion or sale of Licensed Merchandise *other than those permitted under Section 11 of the License Agreement*" (Counterclaims ¶ 41 (emphasis added)). Coach informed Vinci that it was able to exercise its post-termination rights. That Vinci did not do so or that third parties no longer wanted to work with Vinci is not a breach by Coach.

**C. Vinci Cannot State A Claim For Breach Of The License Agreement Based On Any Cancellation Of Coach's Orders.**

Vinci's allegations that Coach breached the License Agreement by allegedly cancelling orders do not state plausible breach of contract claims, since the License Agreement does not impose any obligation on Coach to place or consummate purchase orders with Vinci. In fact, Section 4.4 and

Schedule 4.4 of the License Agreement make clear that Coach "*may*" place purchase orders with Vinci and that any purchase order would be a separate transaction beyond the scope of the License Agreement. *See* License Agreement, ECF No. 13-1, § 4.4, Schedule 4.4. Section 4.4 contemplates that any agreement between Coach and Vinci for purchase orders would be "on terms as the parties may mutually agree in good faith" and, thus, such orders are separate transactions. *Id.* As any alleged purchase orders are not a part of the License Agreement and Vinci does not allege the breach of any separate contracts, Vinci's allegations do not state a breach of the License Agreement. More, Vinci provides no notice to Coach of the date of the purchase orders, the price of the orders, or how Vinci performed its obligations to fulfill such orders. This is woefully insufficient to meet Vinci's pleading obligations. *See Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc*., 651 F. Supp. 155, 184 (S.D.N.Y. 2009) (dismissing breach of contract where "plaintiffs fail to provide any facts about how this contract was formed, the date of formation, the consideration, or the contract's major terms").

## POINT II: VINCI'S TORTIOUS INTERFERENCE CLAIMS SHOULD BE DISMISSED.

### A. Vinci Has Not Stated A Claim For Tortious Interference With Contract.

The Counterclaims omit the terms of Vinci's alleged contracts with customers, distributors, and suppliers, which requires dismissal of Vinci's claim for tortious interference with contract. To plead a claim for tortious interference with contract, a plaintiff must plead "a specific contractual term that was breached." *See Millar v. Ojima*, 354 F. Supp. 2d 220, 230 (E.D.N.Y. 2005)). Here, Vinci does not allege any specific contract term it had with any customer, supplier, or distributor, let alone any specific contract term that was breached.

Unable to dispute this, Vinci cites to *Taboola, Inc. v. Ezoic Inc.* to argue that the pleading standard for tortious interference claims does not require the relevant terms of the contract to be pleaded. 2021 WL 2041639 (S.D.N.Y. May 21, 2021); Opposition at p. 9. The opposite is true. In

*Taboola*, the Court denied a motion to dismiss because the plaintiff affirmatively alleged "*the material terms*" of the agreements that were breached. *See id.* at *2-*4 (emphasis added).

Vinci's attempt to distinguish *Millar* falls flat. *See* Opposition, p. 10. While Vinci is correct that *Millar* is in the context of an at will employment agreement, that distinction is immaterial. *Millar* stands for the well-established proposition that in all contexts, a plaintiff must "identify a specific contractual term that was breached" to state a claim for tortious interference. *See Millar*, 354 F. Supp. 2d at 230; *see also Leadsinger, Inc. v. Cole*, 2006 WL 2320544, at *12 (S.D.N.Y. Aug. 10, 2006) (dismissing claim of defendant's alleged tortious interference with *customer contracts* because "plaintiff has failed to allege the relevant terms of the contracts that existed between" it and customers); *Kirch v. Liberty Media Corp*., 449 F.3d 388, 401-02 (2d Cir. 2006) (affirming dismissal of claim that the defendant tortiously interfered with an *investment banking agreement* because plaintiff did not allege the terms of the agreement that investment bank breached).

That Vinci identified suppliers, customers, and distributors "by name," *see* Opposition at 9, does not make up for the Counterclaims' clear pleading deficiencies. Identifying a third-party by name is not equivalent to identifying a specific contract term that a third-party breached, which Vinci has not done. In *Kirch*, the plaintiff identified a third-party investment bank by name (*i.e.*, JP Morgan) in its claim for tortious interference with contract. 449 F.3d at 401-402. The Second Circuit nonetheless affirmed the dismissal of the claim, reasoning that the plaintiff's allegation that JP Morgan "walked away" from the project was not the equivalent of alleging the violation by JP Morgan of specific contract terms. *Id.* The same is true here: Vinci has pointed to a handful of customers, suppliers, and distributors, that purportedly stepped away from Vinci, but has not alleged any specific contract term breached by any customer or supplier.

More, Vinci does not plead any facts that show that Coach caused *any* breaches with Vinci's suppliers, customers, retailers, and distributors. Any Letter of Authorization, or other communications

from Coach, are insufficient to state a tortious interference claim. The dissemination of truthful information is not actionable. *See I.S. Sahini, Inc. v. Scirocco Fin.*, 2005 WL 2414762, at *5 (S.D.N.Y. Sept. 28, 2005).

### B. Vinci Has Not Stated A Claim for Tortious Interference With Prospective Business Advantage.

As to Vinci's second tortious interference claim (prospective business relationships/business advantage), New York courts routinely dismiss where, as here, the pleading fails "to include the necessary allegation that defendant's conduct was motivated *solely* by malice or to inflict injury by unlawful means, beyond mere self-interest or other economic considerations." *Shared Commc'ns Servs. of ESR, Inc. v. Goldman Sachs & Co*., 23 A.D.3d 162, 163 (1st Dep't 2005) (affirming grant of motion to dismiss claim for tortious interference with prospective business relations) (emphasis added); *Am. Para Prof'l Sys. v. Hooper Holmes, Inc*., 13 A.D.3d 167, 169 (1st Dep't 2004) (affirming dismissal of counterclaim for tortious interference with prospective business relations where "defendant does not allege that plaintiff used wrongful means such as physical violence, fraud, and lawsuits").

In this case, as in the above-cited cases, Vinci fails to allege any non-conclusory facts that Coach used wrongful means or acted solely for the purpose of harming Vinci. At most, the Counterclaims state that after the License Agreement expired, Coach began business with a new licensee, Case-Mate, and that impacted Vinci's business because third parties no longer wanted to work with Vinci. Coach had a legitimate interest in ensuring that suppliers and customers for Coach branded products were aware of Case-Mate's new relationship to Coach and communications to this effect cannot plausibly be cast as "wrongful." *See Goldhirsh Grp., Inc. v. Alpert*, 107 F.3d 105, 108-09 (2d Cir. 1997).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Counterclaims with prejudice.

Dated: New York, New York
August 9, 2024

Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**
By: *<u>/s/ Timothy R. Beyer</u>*
Christine Cesare
Bret Ruber
Jane Ernst
1290 Avenue of the Americas
New York, NY 10104
T: (212) 541-2000
E: cbcesare@bclplaw.com
E: bret.ruber@bclplaw.com
E: jane.ernst@bclplaw.com

Timothy R. Beyer (*pro hac vice*)
Adam B. Stern
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
T: (303) 866-0481
E: tim.beyer@bclplaw.com
E: adam.stern@bclplaw.com

Nicholas Bedo (*pro hac vice*)
One Atlantic Center, 14th Floor
1201 W. Peachtree Street, N.W., Ste. 1400
Atlanta, GA 30309
T: (404) 572-6670
E: nick.bedo@bclplaw.com

*Attorneys for Plaintiffs Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc.*