**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ACS Group Acquisitions LLC and Vinci Brands LLC,**<br><br>Defendants.<br><br>**Vinci Brands LLC,**<br><br>Counterclaim Defendants,<br><br>v.<br><br>**Coach Services, Inc. and Case-Mate, Inc.**<br><br>Counter-Defendants. | Civil Action No.: 1:23-cv-10612-LGS |

**COMBINED REPLY MEMORANDUM OF LAW OF COACH IP HOLDINGS, LLC, COACH SERVICES, INC., AND TAPESTRY, INC. IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

**BRYAN CAVE LEIGHTON PAISNER LLP**
1290 Avenue of the Americas
New York, New York 10104
Tel: 212-541-2000
Fax: 212-541-4630

*Attorneys for Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

I. THE COURT SHOULD PERMIT COACH TO FILE ITS SECOND AMENDED COMPLAINT. ..... 2

A. Coach Promptly Sought Permission To Amend At The Beginning Of Discovery And After Learning Of New Facts Supporting Amendment..... 2

B. Coach's Proposed Amendment Will Not Unduly Prejudice ACS Or Vinci..... 4

C. Coach's Proposed Amendment Is Not Futile..... 7

D. Vinci And ACS Do Not Make Any Showing That The Amendment Is Made In Bad Faith ..... 8

CONCLUSION..... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carey v. Salvadore*,
2022 WL 903223 (W.D.N.Y. Mar. 11, 2022)....................5

*Cartier, Inc. v. Four Star Jewelry Creations, Inc.*,
2004 WL 169746 (S.D.N.Y. Jan. 28, 2004)....................4

*Grand Light & Supply Co. v. Honeywell*,
771 F.2d 672 (2d Cir. 1985)....................5

*Hanlin v. Mitchelson*,
794 F.2d 834 (2d Cir.1986)....................5

*Lema v. Fitzcon Constr./Ren Corp.*,
2022 WL 1321596 (E.D.N.Y. May 3, 2022)....................5

*Miller v. Selsky*,
234 F.3d 1262 (2d Cir. 2000)....................5

*Permatex, Inc. v. Loctite Corp.*,
No. 03-cv-943, 2004 WL 1354253 (S.D.N.Y. June 17, 2004)....................4

*TIG Ins. Co. v. Century Indem. Co.*,
2009 WL 959653 (S.D.N.Y. Apr. 8, 2009)....................4

## PRELIMINARY STATEMENT

The Federal Rules establish a liberal standard for amended pleadings. Coach's Motion for Leave to File a Second Amended Complaint (ECF No. 149, the "Motion") easily satisfies this standard, while Vinci and ACS ignore it. Rather than disputing their own dilatory conduct that occasioned this amendment—including that ACS's counsel represented to KSNY[1] and Coach that Onward was "wholly irrelevant" and withholding a critical agreement until days before Charlie Tebele's deposition—Vinci and ACS deflect. Vinci points to KSNY's and Case-Mate's recent disclosures in the Vinci Action and KSNY Action,[2] yet these disclosures are irrelevant to the merits of this motion and do not warrant its denial.

The reasons for Vinci's and ACS's meritless attacks are transparent. Vinci and ACS cannot point to any "bad faith" or "improper purpose"—as this Court requested ACS and Vinci address—on the part of Coach in seeking amendment. Coach's amendment is made in good faith to hold Vinci, ACS, Tebele, Haddad, and Onward accountable for their wrongdoing. It has been brought in a timely manner, shortly after Coach uncovered sufficient evidence (previously obscured by Vinci and ACS) of Onward's, Tebele's, and Haddad's conduct to support Coach's new claims and allegations.

The Motion has also been brought early in the discovery process. No depositions have been taken in this action and Vinci and ACS have not produced any documents to date (in contravention of the Court-ordered deadline in the case management plan). Coach sought permission to amend shortly after this Court compelled ACS to produce documents pertaining to Onward, Tebele and

---

[1] Kate Spade LLC, Coach Services, Inc., and Tapestry, Inc. in the Vinci Action and KSNY Action are defined herein as "KSNY."

[2] The "KSNY Action" is the related case *Kate Spade LLC et al. v. Vinci Brands LLC et al.*, No. 1:23-cv-05409-LGS-VF and the "Vinci Action" is the related case *Vinci Brands LLC v. Kate Spade LLC et al.*, No 1:23-cv-05138-LGS-VF.

Haddad (over ACS's objection) and Tebele's deposition in May 2024, where KSNY confirmed that Onward, Tebele, and Haddad concocted a series of transactions by which Onward (Vinci's purported agent) took over Coach's and KSNY's license agreements and ACS (Vinci's new lender) seized, marketed, and sold Kate Spade and Coach-branded goods without authorization. Coach also learned in May 2024 that Tebele and Haddad, as principals of Onward and ACS, were the primary, driving forces behind these unlawful acts. Tebele and Haddad are not merely the principals of Onward (Vinci's agent) and ACS (Vinci's lender) but also have power of attorney over Vinci and signed agreements and sent correspondence on its behalf. The legal fiction that Vinci continued to exist beyond June 5, 2023, and that Onward, ACS, and Vinci engaged in arms-length transactions has unravelled. Tebele and Haddad invented the June 5, 2023 transactions to enrich themselves at the expense of Kate Spade and Coach. Thus, Coach's amendment is necessary to prosecute its claims on behalf of the Coach brand with all necessary parties included so that a proper decision on the merits may be reached.

## ARGUMENT

### I. THE COURT SHOULD PERMIT COACH TO FILE ITS SECOND AMENDED COMPLAINT.

#### A. Coach promptly sought permission to amend at the beginning of discovery and after learning of new facts supporting amendment.

Coach seeks leave to amend because after months of concealment from Vinci and ACS, Coach discovered critical evidence that supports adding Onward, Tebele, and Haddad to this action. These disclosures occurred months after the parties began to exchange discovery in the KSNY Action and Vinci Action, but only shortly after: (1) this Court ordered ACS to produce documents pertaining to Onward, Tebele, and Haddad (KSNY Action, ECF No. 249); (2) ACS belatedly "complied" with that Court order (Motion, p. 5); (3) Tebele's May 10, 2024 deposition

(*id.*), and (4) Vinci's agreement to make an initial production of documents relating to Onward (which it only completed in August 2024).[3]

Despite this well-developed record of their concealment, Vinci and ACS ignore the clear timeline and argue that Coach "knew" of Onward's, Tebele's, and Haddad's illicit conduct earlier. This contention is belied by sworn testimony and documentary evidence. Vinci and ACS assert that Coach should have known about the claims underlying this amendment because of a brief conversation that KSNY's Charlotte Warshaw and Tebele had in June 2023. This contention is misguided for a multitude of reasons, particularly that Ms. Warshaw expressly responded "no" when asked whether Tebele mentioned Onward to her in June 2023 when discussing a possible transaction related to Vinci. *See* Beyer Decl. Exhibit B, 280:19-282:10. Additionally, much of Onward's, Tebele's, and Haddad's improper conduct occurred *after* this conversation, precluding the possibility that Coach could have known about their conduct in June 2023. Motion, p. 6 (summary of recently disclosed evidence of illicit conduct in September 2023).

Vinci also points to a handful of documents produced in March 2024 pertaining to Onward as supposedly putting Coach on notice of the new claims. These documents show no such thing. The late-disclosed Onward Services Agreement—which ACS and Vinci concede that they neglected to disclose until *May* 2024—is the critical agreement underlying Coach's amendment. It is signed by Haddad (for Vinci) and Tebele (for Onward) and demonstrates that the June 5, 2023 transactions were fabricated by Tebele and Haddad to facilitate Onward's takeover of the Coach and Kate Spade license agreements. This document demonstrates that Haddad had a purported power of attorney for Vinci and that he appointed Onward (another company run by him) to "facilitate the purchase and sale of [Vinci's] licensed products." *See* ECF No. 158-4. The import

[3] *See* Declaration of Timothy R. Beyer, dated September 23, 2024 ("Beyer Decl."), Exhibit A (email from Vinci's counsel purporting to complete its initial production from the "Onward repository" in August 2024).

of this agreement (along with Tebele's testimony) has *now* become clear. Tebele and Haddad: (i) took effective control of Vinci on June 5, 2023 by becoming Vinci's lender in their capacity as ACS, (ii) gave themselves power of attorney over Vinci, (iii) executed agreements and letters in Vinci's name, (iv) foreclosed on ACS's loan to Vinci, (v) seized Coach branded goods pursuant to that foreclosure, (vi) appointed Onward to sell Coach products, and (vii) then used the profits from those sales to enrich themselves through their roles as principals in ACS and Onward. However, the notion that this convoluted scheme was clear to Coach *without* reference to the Onward Services Agreement, and upon the dissemination of a handful of Onward documents in March or merely through knowing the identities of Tebele and Haddad through their LinkedIn profiles is incredible.

The scope of Tebele's and Haddad's damage is still being uncovered, as Vinci only recently finalized its initial production of Onward documents in the KSNY Action and Vinci Action. Beyer Decl., Exhibit A. Further, all of these disclosures occurred at the beginning of discovery in this action. Under these circumstances, there is no undue delay nor is it plausible that Coach could have amended earlier. *TIG Ins. Co. v. Century Indem. Co.*, 2009 WL 959653, at *4 (S.D.N.Y. Apr. 8, 2009) ("delay" *de minimis* where "the parties had only exchanged initial disclosures, had not even begun documentary discovery, and had taken no depositions"); *Permatex, Inc. v. Loctite Corp.*, No. 03-cv-943, 2004 WL 1354253, at *3 (S.D.N.Y. June 17, 2004) (granting motion for leave when filed within two months of the discovery of new evidence).

### B. Coach's Proposed Amendment Will Not Unduly Prejudice ACS or Vinci.

ACS argues that allowing Coach to amend would be prejudicial because Coach has added a new theory of liability to the case. Putting aside that ACS cites no authority stating that well-pleaded, timely-asserted amendments are prejudicial just because they assert new "theories," ACS has also recently asserted new theories of liability in the Vinci Action. Vinci Action, ECF No. 489.

This negates any justified or credible allegations of prejudice. On August 30, 2024, ACS filed a counterclaim against KSNY asserting new fraud claims against KSNY and Case-Mate. *Id.* More, even if ACS were not asserting new claims (like Coach), the mere fact that Coach's amendment will require "new and additional discovery" does not constitute undue prejudice. *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 2004 WL 169746, at *3 (S.D.N.Y. Jan. 28, 2004) ("[T]he need to expend additional time, resources, or effort does not constitute undue prejudice.").

Vinci's assertion that it would be prejudiced by Coach's amendment also rings hollow. Vinci claims that the "pleadings should be closed" (ECF No. 155 at 7), but ignores that it, too, sought to amend its own pleading in the Vinci Action in the same month as Coach. Vinci does not credibly explain how Vinci's amendment differs from Coach's and why it would merit a different outcome. More, Vinci has been on notice of Coach's breach of contract claim since Coach commenced the action. The only change vis-à-vis Vinci in the proposed amendment is that Coach is adding additional facts to its *existing* claim against Vinci. These facts have always been within Vinci's knowledge and, thus, their addition is not prejudicial. *See Lema v. Fitzcon Constr./Ren Corp.*, 2022 WL 1321596, at *4 (E.D.N.Y. May 3, 2022) (finding that "since the new factual allegations regarding another defendant would have been known to the original defendants, there is no risk of unfair surprise or undue prejudice"); *Miller v. Selsky*, 234 F.3d 1262 (2d Cir. 2000) (permitting a complaint amendment after the close of discovery where "the new facts here are 'merely variations on the original theme'… and do not raise wholly new claims") (quoting *Hanlin v. Mitchelson*, 794 F.2d 834 (2d Cir.1986); *Carey v. Salvadore*, 2022 WL 903223, at *3 (W.D.N.Y. Mar. 11, 2022) ("An amendment…is particularly warranted to conform to evidence learned in discovery, as this 'ensures that the pleadings reflect the issues actually discovered and litigated

during the case.'") (citing *Grand Light & Supply Co. v. Honeywell*, 771 F.2d 672, 680 (2d Cir. 1985)).

More, contrary to Vinci's assertions, the factual allegations that Coach seeks to add to its *existing* breach of contract claim against Vinci are recently discovered. While Coach and KSNY previously knew that Vinci was having difficulty making timely *royalty* payments to KSNY, they did not previously know that Vinci had such severe financial instability that it was generally unable to pay its debts (to third parties other than Coach and KSNY) as they became due. KSNY and Coach adduced this evidence in recent depositions, including the April 29, 2024 deposition of Vinci's former Chief Financial Officer, Joseph Sklencar, where he described Vinci's financial position as so dire that it was akin to a sinking ship. KSNY Action, ECF No. 334-1. Similarly, while KSNY and Coach approved Superior Communications, Inc. as a distributor, neither KSNY nor Coach knew (because Vinci did not disclose) that Vinci intended to transition a significant portion of its duties under the Coach (or KSNY) License Agreement to Superior, including product manufacturer oversight, inventory management, customer management, forecasting, shipping, logistics, and billing. ECF No. 119-2, pp. 16-17; ECF No. 158-2. As plead in the proposed complaint, Vinci did not disclose nor seek approval for a transaction of that nature.

For these reasons, neither ACS nor Vinci would be prejudiced by Coach's proposed amendment. Further, Tebele and Haddad cannot claim surprise. They have been involved in this litigation from the beginning and are funding ACS's and Vinci's legal expenses. Tebele and Haddad cannot be permitted to benefit from contriving to have Onward take over the Coach License Agreement and the sale of Coach-branded goods on behalf of Vinci (which remained Coach's licensee and which was not authorized to assign, transfer, or hypothecate its rights to a third party without Coach's consent) and ACS (which, without basis or authorization, seized

Coach-branded goods), only to have ACS and Vinci conceal evidence of their scheme. Coach should be permitted to pursue claims against Onward, Tebele, and Haddad, given the new facts that have finally been disclosed.

### C. Coach's Proposed Amendment Is Not Futile.

Coach's proposed pleading is not futile. ACS does not dispute this and Vinci's citations to documents outside of the four corners of the pleading do not demonstrate the implausibility of any of Coach's well-pleaded allegations. Vinci contends that "some" of Coach's amendment is futile because Vinci disagrees with Coach's allegations that the scope of Vinci's transfer of services and duties in the Onward Services Agreement and the Superior Manufacturing and Distribution Agreement ("MDA") violate Section 2.3(d) of the Coach License Agreement. Vinci's mere disagreement with Coach's view of the evidence does not warrant denying Coach the opportunity to prove its allegations at trial. In any event, Coach's allegations are supported by ample evidence and not contradicted by the texts of the agreements. Vinci misrepresented to Coach that Superior was merely a "distributor;" in fact, the MDA (which was not disclosed to Coach until discovery in the KSNY Action and Vinci Action) required Vinci, over several months, to transfer essential functions of its business to Superior, including "product manufacturer oversight, inventory purchases, customer management and billing, and physical inventory management." ECF No. 158-2. This evidence is more than sufficient to warrant Coach pleading that Superior was not merely an "Authorized Distributor," as Vinci represented to Coach (ECF No. 156-2), and that Vinci discontinued a substantial portion of its business operations through the MDA, triggering an automatic termination of the Coach License Agreement.

Additionally, Vinci and Onward used the Onward Services Agreement as a pretext to effectively transfer the Coach License Agreement to Onward and permit Onward to act as if it was Coach's "licensee" following execution of the Onward Services Agreement. In this agreement,

Vinci transferred to Onward responsibility for sales, sourcing and logistics, warehousing and distribution, customer invoicing and collection, information technology, and back office and accounting relating to the sale of Coach and Kate Spade-branded goods. Vinci's selective reading of the Onward Services Agreement and bare recitations of the sections purportedly "insulating" Vinci and Onward from liability (ECF No. 155, footnotes 5 and 6) do not change the character of the actual transaction between Vinci and Onward nor do they justify precluding Coach from having an opportunity to prove that Vinci breached, and Onward intentionally caused Vinci to breach, the Coach License Agreement's prohibition on assigning, transferring, or otherwise hypothecating or disposing of, in whole or in part, the license without Coach's approval.

Last, Vinci's argument that the proposed pleading fails to demonstrate that Onward is responsible for violating the Coach License Agreement is incorrect. It is beyond dispute that Tebele signed the agreement for Onward and that Onward knowingly undertook responsibility for Vinci's sales, sourcing and logistics, warehousing and distribution, customer invoicing and collection, information technology, and back office and accounting relating to the sale of Coach branded goods. In any case, this argument would be one made based on the evidence and is irrelevant to whether the proposed complaint alleges plausible claims.

### D. Vinci and ACS Do Not Make Any Showing That the Amendment is Made in Bad Faith

Despite this Court's request to focus its arguments on any purported "bad faith," Vinci and ACS tellingly allocate only a fraction of their briefing to this topic. For its part, Vinci devotes no more than a few lines of unsubstantiated speculation to its discussion of bad faith. ECF No. 155, at 9. ACS similarly provides no showing of bad faith beyond unfounded speculation and, as demonstrated above, provably false allegations of Coach's purported delay. ACS further professes that the amendment is designed to harass and embarrass Tebele and Haddad and "hobble" them.

These allegations have no support beyond ACS's far-fetched theory that KSNY's legitimate discovery requests concerning Vinci's litigation budget are somehow telling of a nefarious motive. Such unsupported arguments a transparent attempt to deflect from ACS's and Vinci's own acts that occasioned Coach's amendment, including acts to conceal Vinci's, ACS's, Tebele's, Haddad's, and Onward's breach and misconduct and to obstruct Coach and KSNY from accessing critical discovery. ACS's reference to KSNY's questions about Vinci's litigation budget as somehow telling of a bad motive is nonsensical. Vinci's ability to pay is directly at issue in this case. Nothing about these legitimate discovery requests about Vinci's budget can remotely be construed as "bad faith" where Vinci is claiming that it has no money to pay Coach and KSNY.

## CONCLUSION

For all the foregoing reasons, Coach respectfully requests that the Court grant Coach's motion to amend and permit it to file the Second Amended Complaint.

Dated: New York, New York
September 23, 2024

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: *<u>/s/ Timothy R. Beyer</u>*

Christine Cesare
Bret Ruber
Jane Ernst
1290 Avenue of the Americas
New York, NY 10104
T: (212) 541-2000
E: cbcesare@bclplaw.com
E: bret.ruber@bclplaw.com
E: jane.ernst@bclplaw.com

Timothy R. Beyer (*pro hac vice*)
Adam B. Stern
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
T: (303) 866-0481
E: tim.beyer@bclplaw.com
E: adam.stern@bclplaw.com

Nicholas Bedo (*pro hac vice*)
One Atlantic Center, 14th Floor
1201 W. Peachtree Street, N.W.,
Ste. 1400
Atlanta, GA 30309
T: (404) 572-6670
E: nick.bedo@bclplaw.com

*Attorneys for Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc.*