**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
COACH IP HOLDINGS, LLC, et al.,

                Plaintiffs,                                    23-CV-10612 (LGS) (VF)

          -against-                                       **OPINION**

ACS GROUP ACQUISITION LLC, et al.,

                Defendants.
-------------------------------------------------------------------X
VINCI BRANDS LLC,

                Counterclaim Plaintiff,

          -against-

COACH SERVICES, INC., et al.,

                Counterclaim Defendants.
-------------------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

Plaintiffs Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc. (together, "Coach"), commenced this action on December 1, 2023, in the Supreme Court of the State of New York against ACS Group Acquisitions LLC ("ACS") for violations of the Lanham Act and related state-law claims arising out of the termination of a license agreement with Vinci Brands LLC ("Vinci," and together with ACS, "Defendants"). See ECF No. 1 ¶¶ 1, 3-4. Coach sought a temporary restraining order and a preliminary injunction against ACS, seeking to stop ACS from selling Vinci's inventory of Coach-branded products. See id. ¶ 4. The state action was removed to this Court on December 5, 2023. See ECF No. 1. Since removal, Coach has amended its complaint once, adding Vinci as a defendant and asserting a breach-of-contract claim. See ECF No. 35. Presently before the Court is Coach's motion for leave to file a Second Amended

Complaint. See ECF No. 147. For the reasons stated herein, the motion for leave to amend is **GRANTED**.

## BACKGROUND[1]

This dispute arises out of the termination of a license agreement between Coach and Vinci, through which Vinci served as an authorized licensee for Coach-branded tech accessories (the "Coach License Agreement"). See ECF No 148-6 (the "Second Amended Complaint" or "SAC") ¶¶ 1-4. The parties dispute Vinci's post-termination obligations and rights, and ACS's derivative rights as Vinci's secured creditor. Id. ¶¶ 11-15, 17-30. On December 19, 2023, Coach amended its complaint for the first time (the "First Amended Complaint"). See ECF No. 35. The First Amended Complaint is the current operative complaint. See id.

In the First Amended Complaint, Coach alleged that Vinci breached its obligations under the Coach License Agreement, and that after termination of the Coach License Agreement, Vinci improperly continued to use the Coach trademark as if it were still a licensee. Id. ¶¶ 171-93. Coach also sought a declaration that Vinci was in default under the Coach License Agreement, that the Coach License Agreement terminated on June 30, 2023, and that Vinci no longer had any rights to dispose of or sell Coach-branded products. Id. ¶¶ 194-207. With regards to ACS, Coach disputes that ACS has a security interest in Vinci's Coach-branded products, as ACS first claimed in a November 2023 notification letter to Coach and in a pending state-court action. Id. ¶¶ 24-26, 94-104. Coach alleged that ACS advertised, promoted, offered for sale, and sold Coach-branded products without authorization in violation of the Lanham Act. Id. ¶ 24. Coach further alleged that ACS's repeated threats to seize and sell Coach-branded products in Vinci's

---

[1] The Court presumes the parties' familiarity with the relevant factual and procedural background of this case. The background information recounted herein is limited to that which is relevant to the instant motion.

possession made further trademark infringement imminent. Id. ¶¶ 28-30. Based on those allegations, the First Amended Complaint asserted claims against ACS for trademark infringement under the Lanham Act (id. ¶¶ 109-24); unfair competition and false advertising under the Lanham Act (id. ¶¶ 125-32); state-law trademark infringement (id. ¶¶ 152-62); state-law trademark dilution (id. ¶¶ 163-67); and common-law unfair competition (id. ¶¶ 168-70). Coach also sought a declaration that ACS does not have any rights to dispose of or sell Coach-branded products. Id. ¶¶ 133-51.

In May 2024, nearly a year after two related actions[2] (together, the "Related Actions) were commenced, ACS and Vinci disclosed in discovery in the Related Actions a sales agency and services agreement (the "Onward Services Agreement") pursuant to which Vinci, without Coach's consent, transferred its obligations under the Coach License Agreement to Onward Brands LLC ("Onward") in June 2023. See ECF No. 149 at 1; SAC ¶¶ 31, 87. Onward is owned and operated by Charles Tebele and Sam "Sonny" Haddad, who also own and operate ACS. See SAC ¶¶ 38-40. Through subsequent discovery in the Related Actions, Coach also learned that Onward, ACS, and Vinci entered into a series of agreements so that Onward could take Vinci's place as the Coach licensee and ACS, as Vinci's secured creditor, could seize, market, and sell Coach-branded products. Id. ¶ 87; see also ECF No. 149 at 1. Coach further learned that Onward, at the direction of Tebele and Haddad, continued to manufacture, market, and sell Coach-branded products without Coach's knowledge or consent. See ECF No. 149 at 1; SAC ¶¶ 69, 87, 103-116.

Coach now seeks to amend its complaint to add factual allegations to further support its existing breach-of-contract claim against Vinci, based on Vinci having entered into the Onward

---

[2] See Vinci Brands LLC v. Coach Servs., Inc., No. 23 Civ. 5138 (LGS) (VF) (S.D.N.Y.); Kate Spade LLC v. Vinci Brands, LLC, No. 23 Civ. 5409 (LGS) (VF) (S.D.N.Y.).

3

Services Agreement and subsequently discontinuing its business operations. SAC ¶¶ 195-216. Coach also seeks to add new defendants: Onward, as well as Tebele and Haddad, who, together, own and operate Onward and ACS, and control Vinci.[3] Id. ¶¶ 87, 132-56, 187-94, 247-84. Coach seeks to add Tebele and Haddad to its existing federal and state trademark infringement, unfair competition, and false advertising claims asserted against ACS, because Tebele and Haddad personally directed ACS to seize and offer for sale Coach-branded products without Coach's consent. See id. ¶¶ 132-56, 187-94. Coach also seeks to add new claims: Count 10 for trademark infringement in violation of the Lanham Act against Onward, Tebele, and Haddad (id. ¶¶ 247-59); Count 11 for unfair competition and false advertising under the Lanham Act against Onward, Tebele, and Haddad (id. ¶¶ 260-66); Count 12 for trademark dilution under state law against Onward, Tebele, and Haddad (id. ¶¶ 267-72); Count 13 for unfair competition under state law against Onward, Tebele, and Haddad (id. ¶¶ 273-76); and Count 14 for tortious interference with contract against Onward (id. ¶¶ 277-84).

## **LEGAL STANDARDS**

Federal Rule of Civil Procedure 15 provides that leave to amend before trial should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). When a plaintiff seeks to add parties to a suit under Federal Rule of Civil Procedure 21, "the showing necessary [to amend the complaint] is the same as that required under Rule 15(a)." Johnson v. Bryson, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012). The standard under Rule 15(a), although liberal, allows motions for leave to amend to be denied where the court finds "undue delay, bad faith or dilatory motive

---

[3] Coach alleges that ACS and Onward took control of Vinci in June 2023 when (1) ACS purchased a loan facility from Monroe Capital Management Advisors, LLC, under which it had lent approximately $174 million to Vinci; (2) Onward purchased most of Vinci's assets; and (3) Vinci delegated its functions under the Coach License Agreement to Onward, pursuant to the Onward Services Agreement. SAC ¶ 87.

on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of amendment, etc." See Foman v. Davis, 371 U.S. 178, 182 (1962); see also McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (stating that "a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party"). "It is within the sound discretion of the court whether to grant leave to amend." John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp., 22 F.3d 458, 462 (2d Cir. 1994).

Under the scheduling order, Coach's deadline to move for leave to file its amended complaint was September 10, 2024. See ECF No. 144. Coach timely filed the instant motion on September 10, 2024. See ECF No. 147. Because Coach timely filed its motion for leave to amend, the motion does not implicate the good-cause standard in Rule 16 and is analyzed solely under Rule 15. See Fed. R. Civ. P. 16(b)(4); Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009) ("Once the deadline for amendment in a scheduling order has passed, leave to amend may be denied 'where the moving party failed to establish good cause.'") (quoting Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000)).

## DISCUSSION

Under Rule 15(a)'s liberal standard, "a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016). ACS and Vinci argue that Coach's amendment will unduly prejudice Defendants, was made in bad faith, and was unduly delayed. Additionally,

Vinci argues that Coach's amendment is futile. For the reasons discussed below, Defendants' arguments are meritless.

　　A.　Undue Prejudice

ACS and Vinci argue that amendment would be unduly prejudicial because adding new claims and defendants will require additional discovery, and, as the parties here are relying on discovery in the Related Actions to litigate this case, significant discovery has already occurred. See ECF No. 154 at 10-11; ECF No. 155 at 5-7. Further, ACS argues that Coach's proposed claims against Tebele and Haddad introduce a new theory of individual liability, as opposed to corporate liability, which will necessitate additional discovery not previously contemplated in this case or the Related Actions. See ECF No. 154 at 10-11. None of these arguments has merit in light of recent amendments in the Related Actions.

The Court granted Vinci and Kate Spade in the Related Actions leave to amend their complaints recently, on October 2, 2024, and October 9, 2024, respectively. See Vinci Brands, No. 23 Civ. 5138, ECF No. 547; Kate Spade, No. 23 Civ. 5409, ECF No. 389. As a result, Haddad and Tebele were added as individual defendants in one of the Related Actions. See Kate Spade, No. 23 Civ. 5409, ECF No. 395. Further, as each party acknowledges, discovery specific to this action has not commenced in earnest because the parties have agreed to rely on discovery in the Related Actions in the first instance. See, e.g., ECF No. 149 at 3; ECF No. 154 at 10; ECF No. 155 at 6. Discovery in the Related Actions is ongoing, and the current discovery deadline is January 31, 2025. See, e.g., Kate Spade, No. 23 Civ. 5409, ECF No. 371. Moreover, given recent filings of amended complaints by Vinci and Kate Spade in the Related Actions, additional discovery will undoubtedly be necessary. But in light of the procedural posture of the Related Actions, coupled with the fact that the parties have relied on discovery in the Related Actions in

this case, there is no merit to the contention that leave to amend should be denied because additional discovery would unduly prejudice Vinci or ACS. See A.V. by Versace, Inc. v. Gianni Versace S.P.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (quoting United States v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989)) (explaining that the "burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading").

The new claims Coach seeks to add stem from the same core factual allegations that have been known by Vinci since the filing of the first complaint. See Lema v. Fitzcon Constr./Ren Corp., No. 20 Civ. 2311 (MKB), 2022 WL 1321596, at *4 (E.D.N.Y. May 3, 2022) (reasoning that where "new factual allegations" would have been known to defendant, "there is no risk of unfair surprise or undue prejudice"); JPMorgan Chase Bank, N.A. v. IDW Grp., No. 8 Civ. 9116 (PGG), 2009 WL 1357946, at *4-5 (S.D.N.Y. May 12, 2009) (allowing amendment to add claims and new defendant where new claims rested on the same allegations as the then-operative complaint). For example, Coach seeks to add allegations that Vinci breached additional provisions of the Coach License Agreement that has been at the core of this case since its commencement. See, e.g., SAC ¶¶ 4-18, 72-88, 195-216. Coach also seeks to add individual defendants to the same trademark infringement, unfair competition, and false advertising claims that are alleged in the operative complaint. Id. ¶¶ 132-56, 187-94. With regards to the entirely new claims against Onward, Tebele, and Haddad, the claims all relate to the recently produced Onward Services Agreement, of which Onward, Tebele, and Haddad were plainly aware given that the agreement was exclusively within their possession. Id. ¶¶ 247-84. The claims against the individual defendants rely on similar, if not the same, facts as the existing claims against ACS. Id. ¶¶ 132-56, 187-94, 247-84.

B.  Bad Faith

Defendants argue that Coach acted in bad faith, because it seeks to add Tebele and Haddad only to "gain a tactical advantage," "drive up costs," and "harass, intimidate, and embarrass" Tebele and Haddad, whom Coach learned through discovery in the Related Actions are "facilitating Vinci's ability to pay its legal fees." See ECF No. 154 at 1, 8-10; ECF No. 155 at 10.

Coach sought to add Tebele and Haddad as defendants only four months after it first learned of facts suggesting that they might be liable in their individual capacity, and only one month after Vinci completed its initial production of documents related to Onward, which further revealed Tebele's and Haddad's individual roles in the alleged infringement of Coach's trademark. See ECF No. 149 at 5-6. Although Defendants contend that Coach has acted in bad faith because it is asserting these claims against Tebele and Haddad solely to "intimidate the parties funding the litigation" (ECF No. 155 at 10), there is no evidence in the record that Coach is merely seeking to "bleed" the individual defendants (ECF No. 154 at 8). And as Defendants implicitly concede given that neither has raised a futility argument with regards to any of the claims in the proposed Second Amended Complaint against Tebele and Haddad, Coach has plausibly alleged claims against those individuals.[4] See SAC ¶¶ 132-56, 187-94, 247-76.

C.  Undue Delay

Coach has acted diligently in seeking to amend its complaint. The new claims Coach seeks to add all stem from its discovery of the Onward Services Agreement. SAC ¶¶ 31, 87, 247-84. Pursuant to that agreement, Vinci transferred its obligations under the Coach License

---

[4] Vinci makes a conclusory statement that Coach seeks to "add futile claims and impose individual liability for corporate actions." See ECF No. 155 at 10. But Vinci does not put forth any argument for why the claims against Tebele and Haddad are futile. See id. at 7-10.

8

Agreement to Onward, and Onward subsequently used Coach's trademark without Coach's knowledge or consent. See, e.g., id. ¶¶ 103-16. That conduct supports Coach's new trademark infringement, false advertising, and unfair competition claims under the Lanham Act, as well as its state trademark dilution and unfair competition claims. See id. ¶¶ 247-76. The Onward Services Agreement was only disclosed to Coach in May 2024. See ECF No. 149 at 5. And it was only in August 2024 that Vinci completed its initial production of documents related to Onward in the Related Actions, revealing to Coach for the first time the extent of Tebele's and Haddad's individual roles in the alleged infringement of Coach's trademark. Id. at 6. Coach sought leave to amend on September 10, 2024. See Permatex, Inc. v. Loctite Corp., No. 3 Civ. 943 (LAK) (GWG), 2004 WL 1354253, at *3 (S.D.N.Y. June 17, 2004) (granting leave to amend where motion was brought "less than two months" after learning new facts); Enzymotec Ltd. v. NBTY, Inc., 754 F. Supp. 2d 527, 537 (E.D.N.Y. 2010) (holding that movant's "argument that it discovered the facts underlying its new cause of action for breach of the supply agreement followed by filing a motion to amend within two months of acquiring the information is sufficient to show diligence").

    D.  Futility

Vinci contends that leave to amend should be denied because "[s]ome of Coach's proposed claims are futile." ECF No. 155 at 7. But Vinci does not specify how any of Coach's proposed causes of action fail to state a claim. See ECF No. 155 at 7-10. With regards to Coach's breach-of-contract claim, Vinci disputes the terms of the Coach License Agreement and takes issue with Coach's factual allegations underpinning its breach-of-contract claim. Id. at 7-9. Vinci does not point to any specific element of a breach-of-contract claim that Coach fails to plausibly allege. Id. And factual disputes do not render a breach-of-contract claim futile. Bernstein v.

9

Seeman, 601 F. Supp. 2d 555, 556 (S.D.N.Y. 2009) (holding that whether contract was breached presented a fact issue, and "a motion to dismiss is not the proper stage at which to resolve factual disputes"); Addison v. Reitman Blacktop, Inc., 283 F.R.D. 74, 80 (E.D.N.Y. 2011) ("argument [that] is simply an attack on the factual validity of the Plaintiffs' claims . . . is irrelevant to the Court's motion to amend analysis"). Likewise, although Vinci argues that Coach's tortious interference claim is "futile and gratuitous," Vinci does not point to any specific element of that claim that Coach failed to plausibly allege in its proposed amended complaint. ECF No. 155 at 9-10. Vinci may vigorously dispute the factual allegations supporting that claim, but that is not a basis for concluding that the claim is futile.

In sum, Rule 15 provides that a court should freely grant leave to amend when justice so requires, and Defendants have not pointed to any facts suggesting undue prejudice, bad faith, undue delay, or futility. There thus is no basis to deny Coach's motion for leave to amend.

## CONCLUSION

For the reasons stated herein, Coach's motion for leave to file a Second Amended Complaint is **GRANTED**. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 147.

**SO ORDERED.**

DATED:   New York, New York
         October 22, 2024

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　VALERIE FIGUEREDO
　　　　　　　　　　　　　　　　　　United States

11