UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
COACH IP HOLDINGS, LLC et al.,                                :
                                  Plaintiffs,      :
                                                              :      23 Civ. 10612 (LGS)
            -against-                                      :
                                                              :      **OPINION & ORDER**
ACS GROUP ACQUISITION LLC et al.,                             :
                                 Defendants.     :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

      Plaintiffs and Counterclaim Defendants Coach IP Holdings, LLC, Coach Services, Inc. and Tapestry, Inc. (collectively, "Coach") move to dismiss counterclaims asserted by Defendant and Counterclaim Plaintiff Vinci Brands LLC ("Vinci") against Coach. In its Amended Answer, as relevant here, Vinci asserted against Coach two breach of contract claims and a declaratory judgment claim. With the parties' agreement, the Court construes Coach's previously filed motion to dismiss to apply to these counterclaims. Coach's motion to dismiss is denied as to the breach of contract claims and granted as to the declaratory judgment claim.

I.     BACKGROUND

      The following summary is based on the Amended Answer and the license agreement described below, which is integral to the Amended Answer. The allegations in the Amended Answer are assumed to be true for the purpose of this motion. *See Emilee Carpenter, LLC v. James*, 107 F.4th 92, 97 (2d Cir. 2024).

      In January 2019, Coach and Incipio Technologies, Inc. ("Incipio") entered into a license agreement, under which Coach licensed Incipio to manufacture and sell certain technology-related products using Coach's licensed marks (the "Agreement"). In exchange, Incipio agreed to make various payments to Coach, including Guaranteed Minimum Royalties ("GMR") and

Image Fund Payments ("IFP").  On or about August 6, 2021, Incipio transferred and assigned all of its rights under the Agreement as amended to Vinci.

In late 2022, a COVID-19 outbreak caused significant disruptions in iPhone production, causing unexpected losses to Vinci.  Vinci sought to renegotiate its GMR obligation with Coach but was unsuccessful.  On June 15, 2023, Coach sent Vinci a notice of non-payment, stating that Vinci owed $597,849.46 in GMR and IFP.  Vinci did not pay Coach within the ten days to cure.

In March 2023, Coach and Third-Party Defendants Case-Mate, Inc. ("Case-Mate") and Case-Mate's parent company CM Brands LLC ("CM Brands") began to discuss a potential license agreement whereby, in substance, Case-Mate and CM Brands would step into the shoes of Vinci as licensee.  Coach communicated with Vinci's suppliers, customers and distributors that, as of June 2023, Vinci no longer had the right to sell or complete manufacturing of Coach merchandise.  Case-Mate and CM Brands similarly communicated to Vinci's suppliers and customers that Case-Mate was Coach's exclusive licensee and threatened legal action if they continue to work with Vinci.  As a result, some suppliers refused to deliver contracted-for merchandise, and some customers refused to take delivery of, and pay for, ordered goods.

II.     **STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));[1] *accord Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

"nudge[ ] . . . claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). Under Rule 12(b)(6), courts "accept as true all well-pleaded factual allegations, draw all reasonable inferences in the plaintiff's favor, and assess the complaint to determine whether those allegations plausibly establish entitlement to relief." *Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024). A court does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021).

For issues of state law, New York law governs because the Agreement includes a New York choice of law provision, and the parties' submissions assume that New York law applies. *See In re Snyder*, 939 F.3d 92, 100 n.2 (2d Cir. 2019) ("[I]mplied consent is . . . sufficient to establish the applicable choice of law.").

### III. DISCUSSION

#### A. Breach of Contract Claims

##### 1. Whether Vinci Performed in Accordance with the Agreement

As a threshold matter, Coach argues that Vinci cannot maintain a claim for breach of the Agreement because Vinci did not perform its own obligations under the Agreement, specifically, Vinci did not pay Coach the GMR and IFP required under the Agreement. This argument is unavailing on this motion, which challenges the sufficiency of the pleading.

Under New York law, the elements of a breach of contract claim include that the claimant "performed in accordance with the contract." *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022). As to this requirement, a claimant need not continue to perform under a contract if the opposing party committed a material breach. *See Awards.com, LLC v. Kinko's, Inc.*, 925 N.E.2d 926, 926 (N.Y. 2010) (noting the nonbreaching party could terminate the

contract when the other party was in material breach); *EXRP 14 Holdings LLC v. LS-14 Ave LLC*, 215 N.Y.S.3d 1, 3 (1st Dep't 2024) ("A material breach of a contract excuses the nonbreaching party's performance . . . ."). A breach is material if it "is so substantial and important . . . to defeat the essential purpose of the parties." *Helgar Corp. v. Warner's Features*, 119 N.E. 113, 114 (N.Y. 1918); *accord Feldmann v. Scepter Grp., Pte. Ltd.*, 128 N.Y.S.3d 13, 14 (1st Dep't 2020). Whether a plaintiff's breach is material is a question for the court only if "the inferences are certain" and otherwise is for the trier of fact. *See Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Cap., Inc.*, 821 F.3d 297, 312 (2d Cir. 2016) (citing *Jacob & Youngs, Inc. v. Kent*, 230 N.Y. 239, 243 (1921)); *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) (holding that the legal arguments and inferences were insufficient at the summary judgment stage to find that the claimant had substantially performed under New York law); *Makarand Garde v. Hexanika, Inc.*, No. 21 Civ. 11221, 2024 WL 4276225, at *5 (S.D.N.Y. Sept. 24, 2024) (same).

Construed most favorably to Vinci as the non-moving party, the Amended Answer alleges that Coach breached its duty under Schedule 8 of the Agreement ("Schedule 8"), excusing Vinci from future performance under the Agreement. Schedule 8 states that the parties "agree to renegotiate in good faith" the GMR if "[t]here is an unexpected variance . . . in launch years or product introduction, or there are material device shortages or recalls outside [Vinci's] control." Vinci informed Coach of such unexpected variance "[b]eginning in December 2022" by communicating to it "the tremendous negative effect" the COVID-19 outbreak had on Vinci's sales, revenues and "ability to pay royalties and license fees to Coach." Coach did not renegotiate with Vinci and insisted that Vinci pay the full GMR. On June 15, 2023, Coach sent Vinci a notice of non-payment claiming that Vinci owed Coach $597,849.46 in GMR and IFP.

Coach's argument that Schedule 8's renegotiation clause is an unenforceable agreement to agree is meritless. Under New York law, the parties "may enter into a binding contract under which the obligations of the parties are conditioned on the negotiation of future agreements," and that "[i]n such a case, the parties are obliged to negotiate in good faith." *IDT Corp. v. Tyco Grp., S.A.R.L.*, 15 N.E.3d 329, 331-2 (N.Y. 2014). The Amended Answer alleges that Coach insisted Vinci's full payment without renegotiating.

The Amended Answer could support the inference that the renegotiation clause serves as a crucial safety valve for Vinci when specified adverse circumstances outside of Vinci's control interfere with Vinci's ability to sell the licensed products, and that Coach's breach of this clause "defeat[s]" Vinci's "essential purpose" underlying the Agreement. *Helgar Corp.*, 119 N.E. at 114. The Amended Answer thus adequately pleads facts showing that Coach's material breach excused Vinci from future performance, including the payment of GMR and IFP, and that Vinci therefore is entitled to sue for breach of contract, despite Vinci's non-performance.

Vinci asserts two breach of contract claims against Coach. One of those claims, which asserts a breach of Section 11 of the Agreement ("Section 11"), can proceed regardless of any finding that Vinci's non-performance was excused. Section 11, by its terms, survives termination of the Agreement and continues to bind the parties. It begins, "Upon the expiration or termination of this Agreement (whether by reason of the expiration of the term of this Agreement, by earlier termination of this Agreement pursuant to Article 3 thereof [regarding default or breach] or otherwise) . . . ." Section 11 survives the termination of the Agreement regardless of whether Vinci's breach caused the termination and continues to bind Coach. Under New York law, a contract provision may "survive[] and remain[] enforceable . . . subsequent to the termination" of the contract, "irrespective of whether the termination . . . resulted from the

natural expiration of the term of the agreement . . . or the breach of the agreement by one of the parties." *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 626 (N.Y. 1997); *accord Remco Maint., LLC v. CC Mgmt. & Consulting, Inc.*, 925 N.Y.S.2d 30, 33 (N.Y. 2011).

### 2. Breach of Section 11 of the Agreement (First Claim for Relief)

The Amended Answer's First Claim for Relief alleges that Coach breached Section 11 by interfering with and preventing Vinci, after termination as Coach's licensee, from completing the production of licensed merchandise that was in process or for which written orders had been received from customers. Coach moves to dismiss on the ground that the Amended Answer does not plead any Section 11 obligation that Coach failed to perform. The motion is denied.

Section 11 provides that, upon the Agreement's expiration or termination, all of Vinci's rights revert to Coach, but (1) as to merchandise in process as of the termination date, Vinci may complete production and sell the merchandise, subject to Coach's option to purchase the inventory (the "Option") and (2) as to merchandise for which written purchase orders have been received from customers as of the termination date, Vinci may sell the merchandise to those customers outright, and not subject to Coach's purchase option.

The Amended Answer sufficiently alleges facts showing a violation of these provisions. The Amended Answer alleges that Coach violated Section 11 by sending Vinci a notice of rights that prohibited Vinci from selling Coach merchandise to any third parties and notified Vinci of Coach's intention to exercise its purchase option, even as to merchandise subject to written orders from customers contrary to Section 11.1. The Amended Answer further alleges that Coach communicated with Vinci's suppliers, customers and distributors that, after termination, Vinci no longer had the right to complete or sell Coach merchandise, thus preventing Vinci from exercising its post-termination rights. After receiving the communications, suppliers refused to

6

deliver merchandise such that Vinci was unable to complete in process and written orders. For merchandise Vinci could deliver, customers with written purchase orders refused to take delivery and pay for merchandise that they had ordered.

In addition to alleging a breach of Section 11, the Amended Answer pleads facts sufficient to state a claim for breach of the "covenant of good faith and fair dealing" which is implicit in every contract. *Cordero v. Transamerica Annuity Servs. Corp.*, 211 N.E.3d 663, 670 (N.Y. 2023). If necessary, the pleading could be amended to add such a claim. This duty prevents Coach from "do[ing] anything which will have the effect of destroying or injuring the right of [Vinci] to receive the fruits of the contract." *Id.* Coach breached this implied obligation by communicating with Vinci's suppliers and customers and injuring Vinci's post-termination rights to complete in-process inventory and sell completed merchandise under Section 11, causing damages to Vinci.

### 3. Breach of Section 4.4 of the Agreement (Second Claim for Relief)

Coach moves to dismiss the Second Claim for Relief which alleges that Coach breached the Agreement by cancelling certain non-cancellable orders placed pursuant to Section 4.4 of the Agreement ("Section 4.4"). Coach moves to dismiss on the grounds that (1) Coach had no obligation to place such orders and (2) the Amended Answer fails to allege details of the orders, referencing only "non-cancelable purchase orders." These arguments are unavailing.

The Amended Answer alleges that in Section 4.4 the parties agreed that Vinci will sell Coach licensed merchandise "as evidenced by timely placed, non-cancelable purchase orders"; "from March 2023 through June 2023 Coach . . . submitted written orders to Vinci for Coach-branded photo accessories, which Coach itself called 'non-cancelable'"; on July 3, 2023, Coach sent Vinci a Notice of Coach's Rights, stating among other things that Vinci was required to

7

produce and fulfill the non-cancelable purchase orders pursuant to Section 4.4 of the Agreement and that Coach would cancel the orders if not delivered by August 2023; Coach was meanwhile making it impossible for Vinci to fulfill any orders by contacting Vinci's suppliers who then refused to ship completed merchandise to Vinci; and Coach cancelled the orders. These allegations are sufficient to state a breach of contract claim.

First, while the Agreement did not require Coach to place any orders, Coach did place orders and Section 4.4 describes Coach's orders as non-cancelable. The Amended Answer also alleges that Coach itself described its orders as non-cancelable. This is sufficient to reflect the parties' agreement that Coach's orders were non-cancelable.

Second, the Amended Answer describes the orders in much greater detail than Coach asserts, and sufficiently provides Coach "with a short, plain notice of the claims against it" pursuant to Rule 8 of the Federal Rules of Procedure. The Amended Answer describes when the orders were placed, the merchandise ordered and a written document from Coach to Vinci in which Coach itself referenced the orders.

### B. Declaratory Judgment Claim (Third Claim for Relief)

The Amended Answer seeks a declaratory judgment that Coach must renegotiate the GMR with Vinci under Schedule 8 of the Agreement. Declaratory judgment is a remedy, "not a cause of action." *Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co.*, 116 F.4th 106, 114 (2d Cir. 2024). Construed as an effort to plead an independent cause of action, i.e., a claim for injunctive relief to remedy the breach of Section 8 discussed above, the claim is dismissed.

Coach's breach of Section 8 does not sustain a claim for specific performance. Under New York law, "specific performance" is unavailable "where money damages would be

adequate." *Sokoloff v. Harriman Ests. Dev. Corp.*, 754 N.E.2d 184, 188 (N.Y. 2001). "In determining whether money damages would be an adequate remedy, a trial court must consider, among other factors, the difficulty of proving damages with reasonable certainty and of procuring a suitable substitute performance with a damages award." *Id.* Specific performance is an appropriate remedy if the subject matter is "unique in kind, quality or personal association where suitable substitutes are unobtainable or unreasonably difficult or inconvenient to procure." *Id.* Such unique circumstances are not present here. Coach asserts that Vinci owed Coach $597,849.46 in GMR and IFP, an amount that Vinci disputes. Should Vinci's argument that Coach breached Schedule 8 prevail, money damages would be adequate.

## IV. CONCLUSION

For the foregoing reasons, Coach's motion to dismiss is **DENIED** on the breach of contract claims and **GRANTED** on the declaratory judgment claim. The surviving counterclaims by Vinci against Coach are: (1) the breach of contract claim for breach of Section 11 and (2) the breach of contract claim for canceling non-cancellable orders.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 113.

Dated: July 10, 2025
       New York, New York

                                                    LORNA G. SCHOFIELD
                                                    **UNITED STATES DISTRICT JUDGE**

9