

# DAVIDOFF HUTCHER & CITRON LLP

ATTORNEYS AT LAW

605 THIRD AVENUE
NEW YORK, NEW YORK 10158

TEL: (212) 557-7200
FAX: (212) 286-1884
WWW.DHCLEGAL.COM

FIRM OFFICES

WHITE PLAINS
ATTORNEYS AT LAW
120 BLOOMINGDALE ROAD
WHITE PLAINS, NY 10605
(914) 381-7400

PALM BEACH
ATTORNEYS AT LAW
250 ROYAL PALM WAY
SUITE 202
PALM BEACH, FL 33480
(561) 567-8488

FIRM OFFICES

ALBANY
ATTORNEYS AT LAW
150 STATE STREET
ALBANY, NY 12207
(518) 465-8230

WASHINGTON, D.C.
ATTORNEYS AT LAW
201 MASSACHUSETTS AVENUE N.E.
WASHINGTON, D.C. 20002
(202) 347-1117

WRITER'S DIRECT: (646) 428-3272
E-MAIL: mry@dhclegal.com

**MEMO ENDORSED**

HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE

**Dated: February 2, 2026**

Coach is directed to file a response by
**February 5, 2026**.

<u>VIA ECF</u>
Hon. Valerie Figueredo, U.S.M.J.
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:    <u>Coach IP Holdings, LLC, et al. v. ACS Group Acquisitions LLC, et al.,</u>
<u>No. 1:23-cv-10612 (LGS) (VF)</u>

Dear Judge Figueredo:

This firm represents Vinci Brands LLC ("**Vinci**"), Onward Brands LLC ("**Onward**"), ACS Group Acquisition LLC ("**ACS**"), Charles Tebele, and Sam Haddad (Vinci, Onward, ACS, Tebele, and Haddad collectively, "**Defendants**") in the above-captioned matter against Coach IP Holdings, LLC ("**Coach IP**"), Coach Services, Inc. ("**Coach Services**"), and Tapestry, Inc. ("**Tapestry**") (Coach IP, Coach Services, and Tapestry collectively, "**Coach**"). I write pursuant to Section I.c.2 of Your Honor's Individual Rules to request a discovery conference with the Court. The reason for the requested discovery conference is Coach's objection and refusal to permit Defendants to depose Todd Kahn, Coach Services' chief executive officer.

Consistent with this Court's January 5, 2026 Order, *see* ECF Dkt. No. 264, Defendants provided Coach with their list of intended deponents, inclusive of three dates of availability with respect to each such deposition on January 19, 2026. Coach did not object to Defendants' inclusion of Kahn upon their receipt of Defendants' aforementioned list. On January 20, 2026, also in accordance with this Court's January 5, 2026 Order, counsel for the parties conducted a meet-and-confer with respect to their respective lists of intended deponents. During the meet-and-confer, the parties then agreed to reconvene at a date to be determined in order to allow them to inquire about their own witnesses' availability. Notably, Coach again failed to object to Defendants' inclusion of Kahn as an intended deponent.

Counsel for the parties reconvened via video conference, which commenced at 10:15am on January 26, 2026. The conference lasted for approximately 30 minutes. Present on behalf of Defendants were the undersigned, Matthew Yogg, along with Robert Price of Davidoff Hutcher & Citron LLP. Present on behalf of Coach were Tim Beyer and Bret Ruber of Bryan Cave Leighton Paisner LLP. Following the undersigned's inquiry as to whether any of Defendants'

DAVIDOFF HUTCHER & CITRON LLP

Hon. Valerie Figueredo, U.S.M.J.
January 30, 2026
Page 2

three proposed dates of availability worked for Kahn, counsel for Coach responded – for the first time – that they were objecting to Defendants' intended deposition of him. When the undersigned inquired about the grounds of Coach's objection, counsel responded by citing the apex doctrine. The undersigned then informed counsel that Defendants possessed numerous communications directly involving Kahn, that Defendants would not agree to forgo deposing Kahn, and that they intended to seek relief from the Court. In response to the undersigned's request that counsel provide dates of availability for another meet-and-confer, counsel for Coach stated that Defendants should "use this [telephone conference] as your meet-and-confer."

As succinctly stated by this Court, "[h]ighly-placed executives are not immune from discovery." *Scott v. Chipotle Mexican Grill, Inc.*, 306 F.R.D. 120, 122 (S.D.N.Y. 2015). "[B]ecause principles relating to apex witnesses are in tension with the broad availability of discovery . . . it is important to excuse a witness from giving testimony only in compelling circumstances." *Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013); *Naftchi v. New York Univ. Med. Ctr.*, 172 F.R.D. 130, 132 (S.D.N.Y. 1997) ("[I]t is exceedingly difficult to demonstrate an appropriate basis for an order barring the taking of a deposition. Nor, in ordinary circumstances, does it matter that the proposed witness is a busy person or professes lack of knowledge of the matters at issue, as the party seeking discovery is entitled to test the asserted lack of knowledge."). Notably, courts "begin with the proposition that plaintiffs have no burden to show that the deponents have any relevant knowledge." *In re Deposition Subpoenas of David Garlock*, 463 F.Supp.2d 478, 481 (S.D.N.Y.2006). Rather, courts assessing an apex challenge consider the likelihood that the individual possesses relevant knowledge, whether another source could provide identical information, the possibility of harassment, and the potential disruption of business. *See Treppel v. Biovail Corp.*, 03 Civ. 3002(PKL)(JCF), 2006 WL 468314, at *1–2 (S.D.N.Y. Feb. 28, 2006); *accord Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK JCF, 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013) (allowing the defendant's deposition of the plaintiff's CEO despite harassment concerns because there was "little doubt that [the CEO] has relevant knowledge," even if his knowledge was not necessarily unique).

Here, the documents and information in Defendants' possession not only establish *a likelihood* that Kahn possesses relevant and unique knowledge about the parties' claims and defenses in this action. They go even further by establishing that Kahn actually possesses such knowledge. By way of example, by email sent on May 26, 2023, Kahn writes that ███████████ ███████████████████████████████████████████████████████████████████ ████████████████" **Ex. 1**, at 1. Kahn's identification of a "███████████" ostensibly refers to a prospective license agreement between Coach and Case-Mate, the facts and circumstance of which are relevant to Vinci's claim that Coach breached Section 11 of the Vinci-Coach License Agreement by denying Vinci's post-termination sell-off rights in order to benefit Case-Mate. Kahn's reference of a "████████████" ostensibly refers to Case-Mate's failed efforts to purchase Vinci's assets, the facts and circumstance of which are relevant to Vinci's prospective claims against Case-Mate for trade secret misappropriation (both common law and under the DTSA) and breach of the 1st and 2nd Case-Mate NDA. Kahn's concern about "████████████

DAVIDOFF HUTCHER & CITRON LLP

Hon. Valerie Figueredo, U.S.M.J.
January 30, 2026
Page 3

█████████" ostensibly refers to outstanding general minimum royalties that Coach claimed it was owed by Vinci, the facts and circumstance of which are relevant to Coach's breach of contract claims and Vinci's claim that Coach failed to renegotiate the general minimum royalty rate in good faith, also in breach of the Vinci-Coach License Agreement. Of course, Vinci cannot know for certain what Mr. Kahn meant when writing these emails, among numerous other facts and circumstances, without eliciting his testimony.



By email sent on April 26, 2023, Kahn writes to Charlotte Warshaw as follows: ██

**Ex. 2**, at 2. Kahn's identification of "██████████" ostensibly refers to Vinci. Kahn's identification of "███████" ostensibly refers to the COACH and KATE SPADE brands. And Kahn's identification of "████████████" ostensibly refers to prospective negotiations with the "████████████████████" itself an ostensible reference to Case-Mate. But perhaps more importantly, the email establishes that Kahn was, at a minimum, actively overseeing Warshaw's dealings with Vinci and Case-Mate. But more likely, Kahn was actively involved in the decision-making concerning Vinci and Case-Mate. *See, e.g.,* **Ex. 3**, June 26, 2023 Zoom Invite (showing Kahn as a participant); **Ex. 4**, May 26, 2023 Email, at 1 (Jude Allan informing Kahn that "████████████████ ██████████" and that █████████████████████ ████████). In fact, on April 26, 2023, in response to a pitch to replace Vinci made directly to Kahn by a third-party, Kahn writes Warshaw stating that ███████████ ████████████████████████████" establishing that Kahn – to the exclusion of Warshaw – was the ultimate decision-maker on the issue of mobile phone case licensee. *See* **Ex. 5**, at 2.

Of course, a central issue to this litigation comprises the Omicron variant of the Covid-19 global pandemic, and whether Coach's refusal to renegotiate Vinci's general minimum royalties under the Vinci-Coach License Agreement was justified or instead, whether it comprised a breach of Section 8 thereof. No doubt, Kahn was at least directly involved in Coach's decision to refuse to entertain such negotiations. Good faith proscribes a party from punishing its counterparty for facts and circumstances entirely out of its control. The October 28, 2022 email directed to Mr. Kahn establishes his actual knowledge about the debilitating conditions then at issue in China, thus triggering his obligation to act in good faith – that is, not punish Vinci for these conditions – by renegotiating Vinci's general minimum royalty rate. *See* **Ex. 6**, at 1.

The foregoing comprises only a sampling of relevant communications directly implicating Mr. Kahn, the remainder of which cannot fit within the three pages allotted to Defendants. In any event, these communications, facts, and circumstances easily satisfy the very low threshold required to entitle Defendants to depose Mr. Kahn.

**DAVIDOFF HUTCHER & CITRON LLP**

Hon. Valerie Figueredo, U.S.M.J.
January 30, 2026
Page 4

Respectfully submitted,

Matthew R. Yogg

MRY/

Encl.

cc: All Counsel of Record (via ECF)