**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ACS Group Acquisitions LLC, Vinci Brands LLC, Onward Brands LLC, Charles Tebele, and Sam "Sonny" Haddad,**<br><br>Defendants.<br><br>**Vinci Brands LLC,**<br><br>Counterclaim Defendants,<br><br>v.<br><br>**Coach Services, Inc. and Case-Mate, Inc.**<br><br>Counter-Defendants. | Civil Action No.: 1:23-cv-10612-LGS |

**COACH IP HOLDINGS, LLC'S, COACH SERVICES, INC.'S, AND TAPESTRY, INC.'S OBJECTIONS TO THE ORDER GRANTING VINCI BRANDS LLC LEAVE TO AMEND ITS COUNTERCLAIMS AND TO JOIN ADDITIONAL DEFENDANTS**

**BRYAN CAVE LEIGHTON PAISNER LLP**
1290 Avenue of the Americas
New York, New York 10104
Tel: 212-541-2000
Fax: 212-541-4630

*Attorneys for Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................ 1
ARGUMENT ........................................ 2
I. Vinci Concedes that the Theory Underlying its Proposed Fraud Claim is NOT the Theory Erroneously Relied Upon in the Order. ........................................ 2
II. The Court Should Not Credit Vinci's New, Unpled Theory. ........................................ 3
III. There is No Dispute: The Emails Vinci Incorporates by Reference into Its Proposed Counterclaims Undermine Its Fraud Allegations. ........................................ 6
IV. Vinci's Proposed Trade Secret Amendments are Futile. ........................................ 6
CONCLUSION ........................................ 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*,
301 F.R.D. 47 (2d Cir. 2014) .......... 3

*Alexander Interactive, Inc. v. Leisure Pro Ltd.*,
2014 WL 4651942 (S.D.N.Y. Sept. 16, 2014) .......... 7

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) .......... 6

*Big Vision Private Ltd. V. E.I. DuPont De Nemours & Co.*,
1 F. Supp. 3d 224 (S.D.N.Y. 2014) .......... 7

*Gualandi v. Adams*,
385 F.3d 236 (2d Cir. 2004) .......... 3

*Ray Larson Assoc's, Inc. v. Nikko Am., Inc.*,
1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) .......... 5, 6

*Sapir v. Rosen*,
2021 WL 4482277 (S.D.N.Y. Sept. 30, 2021) .......... 7

*SKR Resources, Inc. v. Players Sports, Inc.*,
938 F. Supp. 235 (S.D.N.Y. 1996) .......... 5

## PRELIMINARY STATEMENT

The Order determined that Vinci should be permitted to amend its counterclaims to assert fraud against Coach, Ms. Warshaw, and Ms. de Lagarde based on their supposed failure to "disclose that [Coach] intended to terminate the License Agreement and was in negotiations with Case-Mate to replace Vinci." ECF 297, Order at p.61 (internal citation omitted); *see also id*. at pp.63-64. Remarkably, Vinci has now abandoned that theory and newly contends that Coach, Ms. Warshaw, and Ms. de Lagarde committed fraud by failing to disclose that Coach would not permit Vinci to exercise post-expiration rights under the License Agreement. *See* ECF 317, Opposition at p.2. Thus, Vinci agrees that the Order is erroneous—an error Vinci induced with its previous, unsupported position—because it is based on allegations and a theory that Vinci is not pursuing. This Court should properly reconsider and reverse the Order.

Further, Vinci's recent invention cannot state a claim for fraud because it is not pled in Vinci's Proposed Counterclaims. Vinci, in support of its wholly new theory, cites only to a single paragraph in its 406-paragraph Proposed Counterclaims. ECF 317, Opposition at p.2 (citing ECF 207-2, Proposed Counterclaims at ¶ 62). That one paragraph is divorced from, and is in no way encompassed by, the several separate paragraphs enumerating Vinci's proposed fraud claim. *Compare* ECF 207-2, Proposed Counterclaims at ¶ 62 *with* ECF 207-2, Proposed Counterclaims at ¶¶ 391-406. Neither Vinci's allegations as pled in its Proposed Counterclaims nor those newly manufactured in its Opposition state a claim for fraud.

Additionally, even if Vinci's new theory was somehow encompassed by its Proposed Counterclaims, Vinci has not pled and has not argued that Coach had already decided to (allegedly) prevent it from exercising its post-expiration rights at the time of any supposed omission. *See* ECF 207-2, Proposed Counterclaims at ¶¶ 391-406. Having not pled the necessary scienter for fraud, Vinci cannot proceed against Coach, Ms. Warshaw, and Ms. de Lagarde.

Vinci's Opposition urges the Court to ignore that the very same emails that Vinci incorporates by reference into its Proposed Counterclaims are, in fact, contrary to its allegations and do not suggest any fraud. Unable to address those substantive facts, Vinci instructs the Court to disregard those emails and find that its unsupported allegations are facially plausible. Vinci, having incorporated the emails into its proposed pleading by reference, cannot now ignore them—nor should the Court. The emails do not support Vinci's allegations, were not in any way substantively contested by Vinci, and completely undermine Vinci's proposed fraud counterclaim. *See* ECF 317, Opposition at pp.3-4.

Vinci's response in support of its proposed trade secret counterclaim fares no better, as Vinci continues to wrongly focus on the broad category of what constitutes Confidential Information under the License Agreement and not the narrow category of any specific trade secrets that purportedly have economic value *because* they are secret. The reason is clear: Vinci can allege only the broader confidential scope, not the specificity necessary to maintain a trade secret claim.

This Court should reconsider and reverse the Order granting Vinci leave to assert fraud and trade secret misappropriation claims against Coach, Ms. Warshaw, and Ms. de Lagarde.

## ARGUMENT

### I. Vinci Concedes that the Theory Underlying its Proposed Fraud Claim is NOT the Theory Erroneously Relied Upon in the Order.

The Order expressly found that Vinci should be permitted to amend its counterclaims and assert fraud on the basis that Coach, Ms. Warshaw, and Ms. de Lagarde allegedly failed to "disclose that [Coach] intended to terminate the License Agreement and was in negotiations with Case-Mate to replace Vinci." ECF 297, Order at p.61 (internal citation omitted); *see also id*. at p.63 ("Vinci sufficiently alleges that Warshaw and de Lagarde made misrepresentations to Vinci about Coach's intent to continue with its licensing relationship with Vinci."). The Court's ruling,

while in error, was correctly framed given the scope of Vinci's proposed fraud claim, which relied on the theory that Coach "would not continue with Vinci" and that Case-Mate would "take over the fall 2023 iPhone launch." ECF 207-2, Proposed Counterclaims at ¶ 392. Indeed, the entirety of Vinci's proposed fraud claim is founded upon allegations that Coach "would terminate its relationship with Vinci and enlist Case-Mate;" that "Coach provided…information to Case-Mate to enable Case-Mate to replace Vinci;" and that "Vinci was unaware of Coach's intent to move on from Vinci." *Id*. at ¶¶ 393, 394, 401.

Yet, Vinci's Opposition confirms that Vinci has now abandoned the theory both recited in its Proposed Counterclaims and sanctioned by the Order, conceding that "Coach is correct that the Vinci-Coach License Agreement expired (as opposed to being terminated) and *Coach had no duty to renew it*." ECF 317, Opposition at p.2 (emphasis added). Instead, Vinci relies on its newly identified theory that Coach, Ms. Warshaw, and Ms. de Lagarde failed to disclose that Coach would not permit Vinci to exercise post-expiration rights under the License Agreement. *See* ECF 317, Opposition at p.2.

The Order (erroneously) granted leave for Vinci to assert fraud on grounds materially different from those on which Vinci actually intends to proceed. As a result, this Court should unquestionably be "left with the definite and firm conviction that a mistake has been committed." *Advanced Analytics, Inc. v. Citigroup Global Mkts., Inc.*, 301 F.R.D. 47, 50 (2d Cir. 2014) (quoting *Gualandi v. Adams*, 385 F.3d 236, 240 (2d Cir. 2004)). For this reason, and those set forth in the Objections (ECF 305), there is no basis for Vinci's futile and implausible proposed fraud claims.

## II. <u>The Court Should Not Credit Vinci's New, Unpled Theory</u>.

Vinci's newly articulated fraud theory, that "Coach solicited Vinci's work product in furtherance of the Fall 2023 iPhone launch while knowing it intended to prevent Vinci from selling such products pursuant to Vinci's post-expiration rights," appears nowhere in Vinci's proposed

fraud counterclaims. *See* ECF 317, Opposition at p.2. The Court should disregard Vinci's attempted about-face.

Vinci rests its new theory on a single, insufficient allegation: "Had Vinci known that Coach was negotiating with Casemate [sic] on the license extension, and that Coach would interfere with Vinci's rights to complete its orders post June 30th, 2023, Vinci would not have expended the resources in preparing and soliciting orders for these goods." ECF 207-2, Proposed Counterclaims at ¶ 62 (cited in ECF 317, Opposition at p.2). Vinci's new theory does not allege fraud.

*First*, the paragraph cited by Vinci does not appear in its proposed fraud counterclaim. *Compare* ECF 207-2, Proposed Counterclaims at ¶ 62 (section entitled "Coach and Casemate [sic] Secretly Discuss an Agreement to Replace Vinci as Licensee"), *with* ECF 207-2, Proposed Counterclaims at ¶¶ 391-406 (proposed fraud counterclaim). Moreover, there is no reasonable connection between that single paragraph and the many paragraphs in Vinci's proposed fraud counterclaim, which paragraphs do not mention or reference Section 11 of the License Agreement, any post-expiration rights, and/or any alleged interference. ECF 207-2, Proposed Counterclaims at ¶¶391-406. Vinci, tellingly, does not argue that any such connection exists. *See* ECF 317, Opposition at p.2. Vinci's new theory is just that—new—and is neither reflected in its actual pleadings nor relied upon by the Order.

*Second*, proceeding under Vinci's new theory would be futile because Vinci does not plead the necessary element that *at the time of the alleged omission* Coach, Ms. Warshaw, and Ms. de Lagarde had decided to (allegedly) interfere with any of Vinci's post-expiration rights. For example, Vinci instead merely alleges that "Coach, de Lagarde, and Warshaw knew—and Vinci did not—as of April 2023 that it would terminate its relationship with Vinci and enlist Case-Mate to replace Vinci as its licensee and to fulfill the fall 2023 iPhone launch." ECF 207-2, Proposed

Counterclaims at ¶ 393. Of course, that allegation is wrong because the License Agreement did not terminate—it expired by its terms. ECF 305, Objections at pp.1, 7-8. And, as importantly, Vinci does not also allege that Coach, Ms. Warshaw, and Ms. de Lagarde supposedly knew, prior to the License Agreement's June 30, 2023 expiration, that they would (allegedly) interfere with any of Vinci's post-expiration rights. That material deficiency is fatal to Vinci's proposed new fraud theory and claim. *See SKR Resources, Inc. v. Players Sports, Inc.*, 938 F. Supp. 235, 239 (S.D.N.Y. 1996) (dismissing fraud claim for failure to plead intent where "Plaintiff alleges that since Defendant…ordered advertising after having signed the Agreements which called for payment in part trade/part cash, it 'knew at the time it requested [the plaintiff] to run ads that it was not going to pay for the ads.'") (internal citation omitted). Vinci's allegations here are even less fulsome than those in *SKR Resources*; Vinci never alleges that, at the time of the alleged omission, any of Coach, Ms. Warshaw, and Ms. de Lagarde had already decided to prevent Vinci from exercising any post-expiration rights.

*Third*, Vinci wrongly directs the Court to abandon the standard analysis of fraud, urging that this is not an "ordinary" situation, relying upon *Ray Larson Assoc's, Inc. v. Nikko Am., Inc.*, 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996). Vinci's argument provides no reason that this Court should depart from the rule that "a duty to disclose due to one party's superior knowledge…ordinarily arises only in the context of business negotiations where parties are entering a contract." *Id.* at *5. Instead, Vinci argues that this situation is similar to *Ray Larson* because, in each, "the fraud was alleged to have been committed after the contract had been formed—as part of a breach of the contract—rather than before or during its negotiation." ECF 317, Opposition at p.3 (quoting *Ray Larson*, 1996 WL 442799, at *4). Yet Vinci ignores that, for the very reason it cites to, the *Ray Larson* court concluded that "even construing all facts in favor

of plaintiff, defendants' motion [to dismiss] should be granted." *Ray Larson*, 1996 WL 442799, *5.[1]

**III. There is No Dispute: The Emails Vinci Incorporates by Reference into Its Proposed Counterclaims Undermine Its Fraud Allegations.**

Vinci's Proposed Counterclaims rely upon emails that neither specify nor include any alleged fraudulent misrepresentations. ECF 305, Objections at pp.10-12; *see also* ECF 305-1, Exhibit A (KSNY 00441412) *and* ECF 305-2, Exhibit B (CM005849). Vinci does not dispute that it mischaracterized those emails. ECF 317, Opposition at pp.3-4. Nor does it dispute the actual substance of those emails. *Id*.

Instead, Vinci attempts to sidestep the fact that those emails undermine its allegations by contending that the Court's analysis should be restricted to the pleading (and not include the emails). *Id*. That argument ignores the rule, articulated in *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007), that the Court "may consider any…documents incorporated into the complaint by reference." *See* ECF 305, Objections at p.10 (citing *ATSI Comms.*, 493 F.3d at 98 (2d Cir. 2007)). The emails that Vinci elected to incorporate by reference into its Proposed Counterclaims are part of the pleadings and should be considered by the Court. The emails undermine Vinci's fraud allegations and confirm there is no basis for a fraud claim. ECF 305, Objections at pp.10-12.

**IV. Vinci's Proposed Trade Secret Amendments are Futile.**

Vinci's Proposed Counterclaims fail to include the necessary specificity required for trade secret allegations and, instead, are directed to the more general scope of what constitutes

[1] Vinci's additional argument, that it should be granted leave here because it was permitted to proceed under the special facts doctrine in the related Kate Spade cases is of no moment. In those cases the License Agreement terminated, here it simply expired by its terms.

Confidential Information under the License Agreement. Vinci's proposed trade secrets claims are futile as a matter of law.

Bare allegations that information constitutes a trade secret are not sufficient to plead a trade secret claim. For example, reciting the applicable standard and declaring that the standard has been met—as Vinci does here—is plainly insufficient. *See Alexander Interactive, Inc. v. Leisure Pro Ltd.*, 2014 WL 4651942, at *5 (S.D.N.Y. Sept. 16, 2014) ("The conclusory assertion that [something] constitute[s] trade secrets is insufficient."); *see also* ECF 207-2, Proposed Counterclaims at ¶¶ 63-81, 317-329.

In addition, Vinci wrongly focuses its allegations and argument on what constitutes Confidential Information under the License Agreement, not the narrower class, more specificity, and higher standard required for trade secrets. *See* ECF 317, Opposition at p.5. For example, Vinci's argument does not address that "if two or more parties jointly develop confidential information, both own the trade secret," *Big Vision Private Ltd. V. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 260 n.43 (S.D.N.Y. 2014) (internal citation omitted), or that "information about the corporate structure or financial affairs of Plaintiffs and their affiliates" does not constitute a trade secret because "[t]rade secrets generally consist of information that is developed or compiled by the owner of the secrets," *Sapir v. Rosen*, 2021 WL 4482277, *6 (S.D.N.Y. Sept. 30, 2021).

Vinci also wrongly ignores the express terms of the License Agreement when arguing that—although packaging artwork (an alleged trade secret) would belong to Coach under the License Agreement—"Vinci's design files" are not packaging artwork because they "were used in connection with products created under Coach's license with Case-Mate." ECF 317, Opposition at p.6. The License Agreement does not support Vinci's manufactured distinction, as it expressly

states in Section 13.6: "[A]ll…packaging…created by Licensee…for use in connection with the Licensed Marks…shall be the property of Licensor." ECF 29-13, License Agreement at §13.6. The packaging artwork/design files are Coach's property under the License Agreement, Vinci's used "in connection with" Case-Mate products argument is a red herring, and there is no basis for its proposed trade secret claims.

Vinci again ignores the express terms of the License Agreement when arguing that the packaging artwork (an alleged trade secret) cannot be Coach's property because it is not a work made for hire. The License Agreement, in Section 13.6, specifically defines packaging artwork as a work made for hire: "[A]ll…packaging…created by Licensee…are Works Made For Hire within the meaning of the United States Copyright Act of 1976." ECF 29-13, License Agreement at §13.6. And, even if packaging artwork was somehow not a work made for hire, Vinci is required to assign the copyright in the packaging artwork to Coach. *Id. at* §13.6. The packaging artwork and designs are Coach's property and cannot form the basis of any Vinci trade secret claim.[2]

## **CONCLUSION**

The Order granting Vinci Brands LLC's Motion to Amend Its Counterclaims and to Join Additional Defendants is clearly erroneous and contrary to law as to the fraud and trade secrets misappropriation claims, and should be reconsidered and reversed accordingly.

---

[2] The packaging artwork/design files are also within the definition of Merchandise IP under the License Agreement and are owned by Coach. Merchandise IP encompasses "any designs, sketches, or components thereof, packaging, advertising, and artwork necessary or appropriate to enable Licensee to manufacture and sell Approved Licensed Merchandise…." ECF 29-13, License Agreement at §13.8. "All right, title, and interest in and to" Merchandise IP, regardless of whether ultimately incorporated into … all Merchandise derived therefrom … are the sole and exclusive property of Licensor … [and] are hereby assigned to Licensor by Licensee." *Id.*

Dated: New York, New York
May 22, 2026

**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Timothy R. Beyer*

Timothy R. Beyer (*pro hac vice*)
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
T: (303) 866-0481
E: tim.beyer@bclplaw.com

Chris M LaRocco
Bret H.I. Ruber
1290 Avenue of the Americas
New York, NY 10104
T: (212) 541-2000
E: chris.larocco@bclplaw.com
E: bret.ruber@bclplaw.com

Nick E. Williamson (*pro hac vice*)
One Metropolitan Square
211 N Broadway,
Suite 3600
St. Louis, MO 63102
T: (314) 259-2000
E: nick.williamson@bclplaw.com

Nicholas Bedo (*pro hac vice*)
One Atlantic Center, 14th Floor
1201 W. Peachtree Street, N.W.,
Ste. 1400
Atlanta, GA 30309
T: (404) 572-6670
E: nick.bedo@bclplaw.com

*Attorneys for Coach IP Holdings, LLC, Coach Services, Inc., and Tapestry, Inc.*